**UNITED STATES of America, Appellee,**

v.

**Tibor BURGER, a/k/a "Tom Singer",
Defendant-Appellant.**

**Cal. No. 755, Docket 83–1247.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 8, 1984.

Decided Feb. 15, 1984.

Thomas A. Little, Burlington, Vt. (Samuel H. Press, Burlington, Vt., of counsel), for defendant-appellant.

Patti R. Page, Asst. U.S. Atty., D.Vt., Rutland, Vt. (George W.F. Cook, U.S. Atty., Holly K. Harris and Sheila M. Ware, Asst. U.S. Attys., Burlington, Vt., on the brief), for appellee.

Before TIMBERS, VAN GRAAFEILAND and RE,* Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment convicting appellant, after a jury trial before Chief Judge Coffrin in the United States District Court for the District of Vermont, of transporting fraudulent securities in foreign commerce, 18 U.S.C. § 2314. Appellant asserts two grounds for reversal, neither of which has merit.

On October 14, 1982, appellant was a passenger on a train traveling from Montreal to Washington, which was subjected to a routine inspection stop at the Vermont border. Appellant, who previously had been denied entry into the United States, quite naturally attracted the attention of Customs officers. They discovered that he had in his possession a British Visitor's Passport bearing his photograph but a name other than his own. They also discovered five foreign bank drafts with a total face value of $59,000, payable to the person named on the British passport.

* Chief Judge, U.S. Court of International Trade, sitting by designation.

Appellant was removed from the train and taken to St. Albans where he was questioned by an Immigration and Naturalization Service Criminal Inspector. Before being questioned appellant was advised of his *Miranda* rights and signed a waiver form acknowledging that such advice had been given. He also signed a "Record of Sworn Statement", an INS form which also contained *Miranda* warnings. Appellant then gave a sworn statement that was taped with his permission. Appellant answered some questions but refused to answer others. The questioning ceased when appellant requested it.

The Government's proof on the trial showed that the foreign bank drafts were forgeries. Two of them purportedly were issued by the London branch of the Toronto Dominion Bank drawn on a New York City account. The other three were issued by the Tel Aviv office of the First International Bank of Israel, drawn on its account at the Israel Discount Bank of New York.

■ Appellant now contends that his statement should have been suppressed because he was not apprised of the nature of the offense of which he was suspected at the time he was given his *Miranda* warnings. This contention is without merit. A review of the transcribed interview shows that appellant was asked only five questions concerning the bank drafts, which he either refused to answer or answered in an exculpatory fashion. Moreover, there is no *Miranda* requirement that law enforcement officers must inform a suspect of the crime they are investigating. *Carter v. Garrison,* 656 F.2d 68, 70 (4th Cir.1981) (per curiam), *cert. denied,* 455 U.S. 952, 102 S.Ct. 1458, 71 L.Ed.2d 668 (1982). As pointed out in *Collins v. Brierly,* 492 F.2d 735, 739 (3d Cir.), *cert. denied,* 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974), the signing of a *Miranda* waiver does not compel a suspect to answer questions. When the questioning points in the direction of illegal conduct, the person being interrogated may, as appellant did, refuse to answer.

■ Adoption of the inflexible rule which appellant advocates would severely hamper the efforts of law enforcement officers, who often do not know what laws have been violated until they have completed their investigation. The answer to the question of waiver should be determined by the totality of circumstances in each case, and the suspect's ignorance of the thrust of the interrogation is simply one of numerous items to be considered. *See Carter v. Garrison, supra,* 656 F.2d at 69–70, and cases cited therein. When appellant's waiver is viewed in this light, and appellant is seen to be an experienced and knowledgeable criminal with convictions in three different countries, affirmance of the district court's refusal to suppress is quite clearly the correct disposition.

■ Appellant's second argument is based upon a distorted reading of section 2314. Exempted from the operation of that section are obligations, securities, bills, etc. "issued by any foreign government or by a bank or corporation of any foreign country." Appellant contends that this exception applies to privately owned foreign banks which have no governmental connection. We disagree. The legislative history and the language of the statute itself show that the exception was intended to cover only financial documents that were governmental or quasi-governmental in nature. *United States v. Noe,* 634 F.2d 860 (5th Cir.), *cert. denied,* 454 U.S. 876, 102 S.Ct. 355, 70 L.Ed.2d 186 (1981); *United States v. Ortiz,* 444 F.Supp. 81 (W.D.Tex.1977). It is most unlikely, for example, that when Congress specifically included traveler's checks within the coverage of section 2314, it was referring to checks issued by private American banks but not by private foreign banks. American citizens are defrauded quite as effectively by the latter as by the former.

The judgment of the district court is affirmed.