**AMERICAN INSTITUTE FOR IMPORTED STEEL, INC., B.S. Livingston & Company, Inc., and Primary Steel, Inc., Plaintiffs,**

v.

**UNITED STATES, et al., Defendants,**

and

**Lone Star Steel Company, Defendant-Intervenor,**

and

**LTV Steel Company and Inland Steel Company, Defendants-Intervenors,**

and

**Bethlehem Steel Corporation, Defendant-Intervenor,**

and

**United States Steel Corporation, Defendant-Intervenor.**

Court No. 84-11-01673.

United States Court of International Trade.

Dec. 5, 1984.

**4.** Med Express has defaulted on this motion by failing to answer.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz (Michael H. Greenberg, New York City, Beatrice A. Brickell, Washington, D.C., and Charles L. Rosenzweig), New York City, for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C. (Velta A. Melnbrencis, New York City, on brief), for defendants.

Akin, Gump, Strauss, Hauer & Feld (Valerie A. Slater), Washington, D.C., for defendant-intervenor, Lone Star Steel Co.

Cravath, Swaine & Moore (Joseph R. Sahid), New York City, for defendant-intervenors, LTV Steel Co. and Inland Steel Co.

Stewart & Stewart (Eugene L. Stewart, Terence P. Stewart, Washington, D.C., Curtis H. Barnette, Bethlehem, Pa., Laird D. Patterson, Benjamin R. Civiletti), Washington, D.C., for defendant-intervenor, Bethlehem Steel Corp.

Law Dept., U.S. Steel Corp. (J.J. Mangan, C.D. Mallick, J.M. Jarboe, R.K. Capozzi, P.J. Koenig, Pittsburgh, Pa., on brief), for defendant-intervenor, U.S. Steel Corp.

DiCARLO, Judge:

Plaintiffs, two importers of pipe and tube steel from the European Communities (EC) to the United States and a trade association of such importers, seek a preliminary injunction restraining defendants from denying entry to pipe and tube steel from the EC or its member states from November 29, 1984 through December 31, 1984.

The Court denied plaintiffs' application for a temporary restraining order after hearing argument on November 30, 1984. Motions by six domestic steel manufacturers to intervene as party-defendants were granted December 3 and 5, 1984. On December 5, 1984, following oral argument, the Court denied the motion.

## BACKGROUND

On October 30, 1984, the President signed the Trade and Tariff Act of 1984, Pub.L. No. 98–573, 98 Stat. 2948 (the Act). Section 805(b) of the Act provides:

(1) In connection with the provisions of the Arrangement on European Communities' Export of Pipes and Tubes to the United States of America, contained in an exchange of letters dated October 21, 1982, between representatives of the United States and the Commission of the European Communities, including any modification, clarification, extension, or successor agreement thereto (collectively referred to hereinafter as "the Arrangement"), the Secretary of Commerce is authorized to request the Secretary of the Treasury to take action pursuant to paragraph (2) of this subsection whenever he determines that—

(A) the level of exports of pipes and tubes to the United States from the European Communities is exceeding the average of annual United States apparent consumption specified in the Arrangement, or

(B) distortion is occurring in the pattern of United States-European Communities trade within the pipe and tube sector taking into account the average share of annual United States apparent consumption accounted for by Europe-

an Communities articles within product categories developed by the Secretary of Commerce.

Any request to the Secretary of the Treasury pursuant to this subsection by the Secretary of Commerce shall identify one or more categories of pipe and tube products with respect to which action under paragraph (2) is requested.

(2) At the request of the Secretary of Commerce pursuant to paragraph (1), the Secretary of the Treasury shall take such action as may be necessary to ensure that the aggregate quantity of European Communities articles in each product category identified by the Secretary of Commerce in such request that are entered into the United States are in accordance with the terms of the Arrangement.

By letter dated November 14, 1984, the Secretary of Commerce requested the Secretary of the Treasury to direct the Customs Service to prohibit, effective November 20, 1984, entries of pipe and tube from November 29 to December 31, 1984, pursuant to section 805(b)(1)(A) of the Act.[1]

An undated telex was sent by the Assistant Commissioner of Customs for Commercial Operations ordering that no further entries or warehouse withdrawals of steel pipes and tubes from the EC classified under TSUS items 610.30 through 610.52 were to be accepted after November 19, 1984. Implementation of the embargo was subsequently postponed by a second undated telex to 12:01 a.m. November 29, 1984.

Defendants contend that Secretary Baldridge's letter and the Customs telexes were made available to the public on or

---

**1.** In that letter, Secretary of Commerce Malcolm Baldridge determined that the level of pipe and tube steel imports from the EC was exceeding the level stated in the arrangement. He also determined that in the first eight months of 1984, imports of pipe and tube from the EC accounted for 14.4 percent of United States apparent consumption for the period. Under the arrangement, the EC agreed not to exceed their 1979–1981 average share of annual U.S. apparent domestic consumption for pipe and tube

products. Pipe and tube imports from the EC countries in 1979–1981 averaged 5.9 percent of the U.S. market.

The exchanged letters referred to in section 805(b)(1) of the Act, stating the arrangement, are reprinted at *United States—European Communities Steel Pipe and Tube Imports Agreement: Hearings Before the Subcomm. on International Trade of the Senate Finance Comm.,* 98th Cong., 1st Sess. 58 (1983).

about the date of their original transmission.[2]

Plaintiffs B.S. Livingston and Company and Primary Steel, Inc. allege that they have shipments of pipe and tube steel from the EC at sea due to arrive at Houston, Texas on December 5 which will not be allowed entry until January 1, 1985. They claim they will incur costs of wharfage, storage, handling and interest involved in putting the merchandise in Customs bonded warehouses if prevented from making delivery; that their customers may cancel contracts forcing sale of the merchandise at a substantial loss; and injury to their reputation as reliable suppliers.

Plaintiffs challenge the embargo on four grounds. They allege that: (1) defendants failed to comply with procedural requirements of section 805 of the Trade and Tariff Act of 1984; (2) defendants failed to comply with the publication provisions of the Federal Register Act (FRA), 44 U.S.C. § 1501 (1982), the publication requirement of the Administrative Procedure Act (APA), 5 U.S.C. § 552 (1982) and the notice and comment provisions of the APA, 5 U.S.C. § 553 (1982); (3) defendants' actions are arbitrary, capricious and unsupported by valid administrative purpose, and, therefore, null and void under 5 U.S.C. § 706(2)(A) (1982); and, (4) since section 805 of the Act gives the administration authority to enforce an arrangement with the EC to limit EC steel imports into the U.S., and since that arrangement has been denounced by the EC, defendants' actions to enforce the arrangement are a nullity.

The plaintiffs invoke the Court's jurisdiction under 28 U.S.C. § 1581(i)(3) and (4).

## THE PRELIMINARY INJUNCTION

In order to prevail on this motion, plaintiffs must show (1) threat of immediate irreparable harm; (2) likelihood of success on the merits; (3) that the public interest would be better served by issuing rather than by denying the injunction; and, (4) the balance of hardships on the parties favors issuing the injunction. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983); see *S.J. Stile Associates, Ltd. v. Snyder*, 646 F.2d 522, 525, 68 C.C. P.A. 27, 30 (1981); *American Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 297–301, 515 F.Supp. 47, 52–55 (1981) (discussing the relative weight accorded to each factor).

■ Plaintiffs must make a clear showing that they are entitled to this relief. *Asher v. Laird*, 475 F.2d 360, 362 (D.C.Cir. 1973); *Dijub Leasing Corp. v. United States*, 1 CIT 42, 51, 505 F.Supp. 1113, 1120 (1980).

### A.  IRREPARABLE INJURY

Plaintiffs allege that they will be liable for various wharfage, handling and storage expenses they would not have incurred but for the embargo.

In *S.J. Stile Associates, Ltd. v. Snyder*, 646 F.2d 522, 68 C.C.P.A. 27 (1981), the Court of Customs and Patent Appeals held that an increase in business expenses alone is not irreparable injury.

> In essence, the [plaintiff] brokers invoke the equitable powers of the court to stop an action of the Customs Service on the sole ground that the action would cause some increase in their business expenses ... Nothing in the law requires that the Secretary or the Customs Service insure against an increase of business expenses of customs brokers. *Thus solid proof that increased expenses would be certain, had the same been addressed, would not alone justify the injunction sought.*

*S.J. Stile Associates Ltd.*, 646 F.2d at 525–526, 68 C.C.P.A. at 30 (footnotes omitted) (emphasis added).

**2.** A news release by William E. Brock, United States Trade Representative, on November 27, 1984, described the actions to be taken effective November 29, 1984. Defendants assert that both telexes were distributed to the importing community by a variety of methods on November 19, 1984. Affidavit of John Martuge, Acting Director, Duty Assessment Division, United States Customs Service, Exhibit 8 to Defendants' Opposition to Plaintiffs' Request for a Preliminary Injunction.

Plaintiffs also claim that delay caused by the embargo may result in cancellation of existing contracts and damage their reputation as reliable suppliers.

The plaintiffs have produced no evidence that these additional injuries would occur. They have made no showing that delays of less than a month would violate the terms of any contract. They have made no showing that time is of the essence in any contract. They have not shown that they could not substitute other steel products either from their own inventories or from other sources and thereby eliminate potential customer dissatisfaction. The Court does not know whether the parties to these contracts have provided for delays in their agreements in the event of government action.

■ Where irreparable injury is not demonstrated by "probative evidence" a preliminary injunction should be denied. *See American Spring Wire Corp. v. United States*, 7 CIT —, 578 F.Supp. 1405, 1408 (1984); *American Air Parcel Forwarding Company, Ltd. v. United States*, 1 CIT 293, 298, 515 F.Supp. 47, 52 (1981) (plaintiffs bear "heavy burden of producing evidence" on motion for preliminary injunction).

■ The Court holds that plaintiffs have failed to demonstrate the necessary irreparable harm.

## B. LIKELIHOOD OF SUCCESS ON THE MERITS

■ It is unnecessary for plaintiffs to establish likelihood of success on the merits with "mathematical probability." *Com-*

---

**3.** That letter states in part:
I determine, in accordance with section 805(b)(1)(A) of the Trade and Tariff Act of 1984, that the level of exports of all pipes and tubes to the United States from the EC is exceeding the average share of annual United States apparent consumption specified in the arrangement. I also determine in accordance with Section 805(b)(1)(B) of the new law that distortion is occurring in the pattern of U.S.-EC trade within the pipe and tube sector, taking into account the average share of annual U.S. apparent consumption accounted for by EC exports to the United States ...

*mittee to Preserve American Color Television and Imports Committee v. United States*, 4 CIT 202, 204, 551 F.Supp. 1142, 1144 (1982). However, in this case, the Court finds there is no likelihood of success on the merits.

■ Plaintiffs first cause of action is that defendants failed to comply with the procedural requirements of section 805 of the Act since no determination was made by the Secretary of Commerce as required by subsection (b)(1); no request has been made by the Secretary of Commerce to the Secretary of the Treasury as required by subsection (b)(1); and no action has been taken by the Secretary of the Treasury as required by subsection (b)(2).

The November 14, 1984 letter from the Secretary of Commerce to the Secretary of the Treasury explicitly made the determination and request required by section 805(b)(1), (2) [3] and the subsequent Customs telexes constitute the action taken at the direction of the Secretary of the Treasury pursuant to subsection (b)(2).

Plaintiffs also allege in their first cause of action that no regulations have been promulgated by defendants under section 805(c). That subsection provides:

For purposes of carrying out this title, the Secretary of the Treasury *may provide* by regulation for the terms and conditions under which steel products may be denied entry into the United States.

Pub.L. 98–573, § 805(c), 98 Stat. 3046 (Emphasis added).

Consequently, I request that you take the necessary actions as specified in Section 805(b)(2) of the Trade and Tariff Act of 1984, to ensure that the terms of the arrangement are met. Specifically, I request that you direct Customs Service officials to prohibit, effective November 20, 1984, further entries for consumption or withdrawals from warehouse for consumption for the remainder of 1984 for EC pipe and tube.
*See* Exhibit 4 of Defendant's Memorandum in Opposition to Plaintiffs' Request for a Preliminary Injunction.

■ There is no requirement that the Secretary of the Treasury promulgate such regulations.

Since defendants have complied with the procedural requirements of section 805, plaintiffs' first cause of action has no likelihood of success.

Plaintiffs' second cause of action is that the defendants have not·complied with the requirements for publication of the Federal Register Act, 44 U.S.C. § 1501 and requirements for publication of 5 U.S.C. § 552 and prior notice and comment of 5 U.S.C. § 553, of the Administrative Procedure Act.

Plaintiffs conceded at oral argument that the FRA required publication of any documents involved in this action only if the APA required such publication.[4]

5 U.S.C. § 552(a)(1)(D)[5] requires an agency to publish in the *Federal Register.*

substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency ...

Section 552(a)(1) continues:

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

Plaintiffs argue that the Customs actions in imposing the embargo were "substantive rules of general applicability."

■ Assuming *arguendo* that the government action here—of limited duration affecting ·a small, sophisticated community importing of a particular kind of steel from particular countries—is within section 552(a)(1)(D), plaintiffs had actual and timely notice of the action and are bound by the embargo. *See Yassini v. Crosland,* 618 F.2d 1356, 1361–1362 (9th Cir.1980); *United States v. Mowat,* 582 F.2d 1194, 1201 (9th Cir.1978). *Cf. United States v. Aarons,* 310 F.2d 341, 348 (2d Cir.1962) (actual notice).

The decision to implement the embargo was not made until November 14, 1984. Defendants·state that Secretary Baldrige's letter of November 14, 1984 and the two undated telexes were made available to the public. Plaintiffs had actual notice of defendants decision to implement the embargo before the embargo went into effect.[6] Plaintiffs make no showing of prejudice and their notice is, therefore, timely. *See Neighborhood Legal Services, Inc. v. Legal Services Corp.,* 466 F.Supp. 1148, 1154 (D.Conn.1979).[7]

Plaintiffs also allege as part of their second cause of action that defendants failed to provide notice and opportunity for public comment on the action, as required by 5 U.S.C. § 553.

---

4. Section 5(a) of the Federal Register Act, 44 U.S.C. § 1505(a) (1982) requires the following to be published in the *Federal Register:*

(1) Presidential proclamations and Executive orders, except those not having general applicability and legal effect ...
(2) documents or classes of documents that the President may determine from time to time to have general applicability and legal effect; and
(3) documents or classes of documents that may be required so to be published by Act of Congress.
For the purposes of this chapter every document or order which prescribes a penalty has general applicability and legal effect.
The plaintiffs contend that only subsection (3) has applicability here.

5. Plaintiffs make no argument that 5 U.S.C. § 552(a)(1)(A)–(C) applies.

6. Plaintiffs' Affidavits annexed to its Order to Show Cause were executed November 28, 1984.

7. Plaintiffs rely on *Anderson v. Butz,* 550 F.2d 459 (9th Cir.1977), where implementation of an instruction interpreting a regulation was enjoined pending publication in the *Federal Register.* "If the Ninth Circuit also meant that failure to comply with a § 552 publication requirement concerning a grant-making policy renders such a policy void even though the applicant learns of the policy and is not prejudiced by lack of publication, this Court respectfully disagrees." *Neighborhood Legal Services, Inc. v. Legal Services Corp.,* 466 F.Supp. 1148, 1154 (D.Conn. 1979). This Court concurs.

Assuming *arguendo* that the imposition of the embargo was a "rule," and its formulation "rulemaking," within the ambit of section 553,[8] section 553(a)(1) exempts from notice and comment rulemaking "to the extent that there is involved a military or foreign affairs function of the United States."

In *Mast Industries, Inc. v. Regan*, 8 CIT ——, 596 F.Supp. 1567 (1984), *appeal docketed*, No. 85–748 (Fed.Cir. Nov. 8, 1984), this Court held that Customs regulations defining country of origin of textile products subject to quota under bilateral agreements or unilaterally imposed restraints involved a foreign affairs function within the meaning of section 553(a)(1), and were exempt from the prior notice and comment requirements of section 553.

■ As in *Mast*, the action challenged here clearly and directly goes to the purpose of an international agreement: limiting imports. The embargo of EC pipe and tube steel implements Congress' direction that the U.S.–EC arrangement be enforced and is, therefore, a foreign affairs function.

Plaintiffs' third cause of action is that the embargo should be declared void under 5 U.S.C. § 706(2)(A) which states that a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."

Plaintiffs argue that since defendants failed to make or publish the determinations and rules required by the statute and to afford plaintiffs notice and an opportunity to comment in accordance with the APA, the embargo is arbitrary and capricious.

■ Since the Court finds that the defendants made the required determinations and their actions were properly exempt from the publication, notice, and comment provisions of the APA, the Court finds no

likelihood of success on plaintiffs' third cause of action.

Plaintiffs' fourth cause of action that the embargo is null and void because the U.S.–EC arrangement is no longer in effect.

Plaintiffs allege that on November 27, 1984, the EC delivered a letter to U.S. Ambassador George Vest in Brussels, Belgium, terminating the Pipe and Tube arrangement referred to in the Act.

On November 29, 1984, Secretaries Baldridge and Regan notified that EC that the United States considers that the arrangement remains in force. Defendants also argue that Customs was ordered to prohibit the entry of EC pipe and tube steel before EC announced the termination of the treaty.

■ The current status of the arrangement is not relevant to plaintiffs' claim. The administration derives its authority not from the arrangement, but from the Act, passed by Congress. *Cf. Mast Industries, Inc. v. Regan*, 8 CIT ——, 596 F.Supp. 1567 (1984), *appeal docketed*, No. 85–748 (Fed. Cir. Nov. 8, 1984) (President's authority to limit textile imports derived from section 204 of the Agricultural Act of 1956, 7 U.S.C. § 1854, not international agreements). In effect, Congress granted the Administration authority to limit annual imports of EC pipe and tube steel to 5.9 percent of U.S. apparent consumption. The actions taken by the Secretaries of Commerce and the Treasury are in accordance with that authority.

The Court holds that plaintiffs' fourth cause of action has no likelihood of success.

## C. PUBLIC INTEREST

■ In determining whether the public interest would be better served by issuing rather than denying the injunction, the Court takes cognizance of Congress' judgment that enforcement of the terms of the U.S.–EC arrangement serves the public in-

---

**8.** Section 553 applies to agency rulemaking. "Rulemaking" is defined as "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5). The APA defines "rule" to mean "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."

terest. Following lengthy consideration of the matter, Congress, less than 2 months ago, provided the Administration with authority to take the action plaintiffs now challenge. Congress determined that limitation of steel imports, including pipe and tube steel from the EC, to protect the domestic steel industry, is in the public interest. *See* the Act at sections 802 ("full and effective implementation of the national policy for the steel industry will substantially improve the economy and employment in both the steel and iron ore-producing sectors") and 803 ("Sense of Congress Regarding the National Policy for the Steel Industry"); *Remarks of President Reagan in Signing the Omnibus Trade Bill Oct. 30, 1984,* 7 Business America, Nov. 12, 1984 at inside front cover (the Act will "help keep the United States from becoming the world's steel dump").

■ The Court holds that the public interest is best served by denying the injunction.

### D. BALANCE OF THE HARDSHIPS

■ In balancing the hardships the Court must consider whether granting the preliminary injunction would give plaintiff all or most of the relief to which it would be entitled if it were to succeed at trial. *Dorfmann v. Boozer,* 414 F.2d 1168, 1173 n. 13 (D.C.Cir.1969); *Knapp v. Walden,* 367 F.Supp. 385, 388 (S.D.N.Y.1973).

■ The embargo is to expire January 1, 1985. Granting plaintiffs' motion would be effectively granting them all the relief they seek.

Defendants allege that if the injunction were granted, there would be substantial risk of irreparable harm to domestic producers of pipe and tube steel, since significant quantities of EC pipe and tube steel would be imported.

The Court finds that the balance of hardships favor the defendant.

### CONCLUSION

Since the Court finds that plaintiff will suffer no irreparable injury, has no likelihood of success, that the public interest is best served by enforcement of the arrangement and that the balance of the hardships favor the defendant, the motion for preliminary injunction is denied.