**Ramon AZURIN and Gregorio Araneta, Plaintiffs,**

v.

**UNITED STATES and William Von Raab, Commissioner of the United States Customs Service, Defendants.**

**Court No. 86–03–00336.**

United States Court of International Trade.

March 17, 1986.

Anderson, Hibey, Nauheim & Blair (Eric I. Garfinkel and Richard A. Hibey), Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., Dept. of Justice (J. Kevin Horgan and Elizabeth Seastrum), Washington, D.C., for defendants.

### MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiffs seek a temporary restraining order preventing the United States Customs Service (Customs) "from transferring ... to any Committee of the United States House of Representatives, any representatives of the Republic of the Philippines, or to any other person"[1] originals or duplicates of property that arrived in the United States with Ferdinand E. Marcos, the former president of the Republic of the Philippines, and his party on February 26, 1986.

Plaintiffs' motion is denied.

#### Background

Arriving in the United States at Hickam Air Force Base, Hawaii, on February 26, 1986, Mr. Marcos and his party brought with them currency, documents, jewelry and other property. On March 7, 1986, plaintiff Araneta filed Customs Form 7501

---

**1.** Motion for Temporary Restraining Order at 1.

and Entry Summary for certain property as "attorney-in-fact" for Mr. Marcos as importer of record.[2] On March 10, 1986, plaintiff Azurin executed a Customs Form 4790, Report of International Transportation of Currency or Monetary Instruments, on behalf of Mr. Marcos, covering currency. Neither plaintiff claims an ownership interest in any of the property currently in Customs custody.

Plaintiffs allege that all procedures incidental to Customs inspection and processing of the property were completed on March 12, 1986, but that Customs had received instructions not to release the property.

On March 13, 1986, plaintiffs, uncertain as to which court had jurisdiction, commenced mandamus actions in this Court and in the United States District Court for the District of Hawaii[3] seeking to compel Customs to release the property to plaintiffs.

In both mandamus actions it is alleged that Customs retention of the property violates section 142.19(b) of the Customs Regulations, 19 C.F.R. § 142.19(b) (1986), and plaintiffs' rights to freedom from unreasonable search and seizure, due process, and privacy. Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1581(i)(1) and (4) (1982). The Court finds that it has jurisdiction over the mandamus action.

Simultaneously with the filing of the actions for mandamus, plaintiffs sought temporary restraining orders in both courts to prevent Customs from releasing copies of the documents in Customs possession pursuant to formal requests from the Chairman and Ranking Minority Member of the Subcommittee on Asian and Pacific Affairs of the Foreign Affairs Committee of the United States House of Representatives and the Republic of the Philippines.[4] Plaintiffs claim a constitutional right to privacy would be violated by release of the documents.

At a conference immediately following the filing of plaintiffs' complaint and motion for restraining order, the Court directed that briefs be filed by the close of business the following day, and that counsel for both parties appear for oral argument on the motion on March 15, 1986.

On March 14, 1986 the Court was informed by plaintiffs' counsel that the District Court for the District of Hawaii had issued a temporary restraining order *ex parte* enjoining defendant for ten days from allowing access to the property described in the Customs Form 7501 "except to those persons entitled to access pursuant to lawful subpoena, other legal process compelling production, or pursuant to the laws or treaties of the United States."[5] Since the order issued by the district court did not unconditionally prohibit access to the documents, plaintiffs did not withdraw their motion for a restraining order in this Court.

### The Temporary Restraining Order

Although the motion before the Court is for a temporary restraining order, plaintiffs in their brief say the criteria for granting a preliminary injunction are appropriately applied to its motion. Since defendants received notice of plaintiffs' motion, and both parties were afforded an opportunity to be heard orally and in writing, the Court will consider, under an appropriately relaxed evidentiary standard, the criteria for issuance of a preliminary injunction. *Levas & Levas v. Village of Antioch,* 684 F.2d 446, 448 (7th Cir.1982); *Ragold, Inc. v. Ferrero, U.S.A., Inc.,* 506 F.Supp. 117, 122–23 (N.D.Ill.1980); 11 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2951, at 499 (1973). These criteria are: 1) threat of immediate irreparable harm; 2) likelihood of success on the merits; 3) that the public interest

---

**2.** Copies of the customs documents were received by the Court on March 17, 1986.

**3.** *Azurin v. von Raab,* Civ. No. 86–0189 (D.Haw.).

**4.** These requests are described *infra* at p. 10.

**5.** *Azurin v. von Raab,* Civ. No. 86–0189, at 2 (D.Haw. Mar. 13, 1986) (temporary restraining order).

would be better served by issuing rather than by denying the injunction; and 4) whether the balance of hardships on the parties favors issuing the injunction. *See Zenith Radio Corp. v. United States*, 1 Fed.Cir. 74, 76, 710 F.2d 806, 809 (1983); *S.J. Stile Associates, Ltd. v. Snyder*, 68 CCPA 27, 30, 646 F.2d 522, 525 (1981).

*Irreparable Harm*

An injury is irreparable if it cannot be undone through monetary remedies. *S.J. Stile Associates, Ltd. v. Snyder, supra; Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir.1981). Plaintiffs allege that their privacy rights will be irreparably injured if the documents are released. The Court agrees that "the right of privacy must be carefully guarded for once an infringement has occurred it cannot be undone by monetary relief." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir.1981). But, for reasons stated in the following section of this opinion, the Court believes that plaintiffs have stated no privacy rights in this action, and, therefore, will suffer no irreparable injury if their motion is denied.

*Likelihood of Success*

"It is unnecessary for plaintiffs to establish likelihood of success on the merits with 'mathematical probability'. *Committee to Preserve American Color Television and Imports Committee v. United States*, 4

CIT 202, 204, 551 F.Supp. 1142, 1144 (1982)." *American Institute for Imported Steel, Inc. v. United States*, 8 CIT ——, ——, 600 F.Supp. 204, 209 (1984).

Plaintiffs make two claims: that Customs is unlawfully holding their property, and should return it to them, and that Customs is about to release unlawfully copies of the property to third parties.[6] The Court will consider the likelihood of success of each of these claims.

1. The Mandamus Claim to Compel Customs to Release the Property to Plaintiffs

Plaintiffs claim that Customs refusal to release the property to them violates section 142.19(b) of the Customs Regulations, 19 C.F.R. § 142.19(b), and violates plaintiffs' constitutional rights to be free from unreasonable search and seizure, to due process, and to privacy.

Plaintiffs' contention that 19 C.F.R. § 142.19(b)[7] requires Customs to release property that it has reason to believe may have been imported in violation of the laws or treaties of the United States cannot withstand scrutiny. Section 142.19(b) does not compel Customs to release imported merchandise, but recites the conditions upon which merchandise may be released. Indeed, section 142.19(b)(2) says that merchandise "shall not be released" unless

---

**6.** Plaintiffs' complaint states only the first of these claims; the second is contained in their motion for a temporary restraining order. At oral argument on March 15, 1986 plaintiffs orally moved, at the Court's suggestion, to amend their complaint to allege the second claim. Defendants have contested the Court's jurisdiction over this claim. The jurisdictional basis of the second claim is not alleged, but is presumably 28 U.S.C. § 1581(i). Since the Court denies the requested relief, it need not decide the jurisdictional issue. *See Secretary of the Navy v. Avrech*, 418 U.S. 676, 677–78, 94 S.Ct. 3039, 3040, 41 L.Ed.2d 1033 (1974) (per curiam) ("Without the benefit of further oral argument, we are unwilling to decide the difficult jurisdictional issue.... We believe that even the most diligent and zealous advocate could find his ardor somewhat dampened in arguing a jurisdictional issue where the decision on the merits is thus foreordained.")

**7.** 19 C.F.R. § 142.19 states in relevant part:

Merchandise, for which an entry summary serves as both an entry and an entry summary, shall not be released from Customs custody until an appropriate bond has been filed, or the entry has been liquidated, as follows:

. . . .

(b) *After liquidation.* If a bond has not been filed in accordance with paragraph (a) of this section, the merchandise shall not be released before:

(1) The entry has been liquidated and the full amount of all duties and taxes due, including dumping or other special duties and charges, has been paid, or the right to free entry established.

(2) The district director determines that the merchandise may be admitted into the commerce of the United States, and

(3) All documents relating to the merchandise which are required by law or regulation have been filed.

Customs "determines that the merchandise may be admitted into the commerce of the United States."

Section 499 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1499 (1982), provides in part:

*Imported merchandise*, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, *shall not be delivered from customs custody*, except under such bond or other security as may be prescribed by the Secretary of the Treasury to assure compliance with all applicable laws, regulations, and instructions which the Secretary of the Treasury or the Customs Service is authorized to enforce *until it has been inspected, examined, or appraised and is reported by the appropriate customs officer to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States* [emphasis added].

*See United States v. Garber*, 626 F.2d 1144, 1155 (3d Cir.1980) ("customs custody of imported goods continues until the merchandise has been inspected, found to be correctly invoiced, and found to otherwise comply with the laws of the United States"). Customs regulations require that Customs hold imported merchandise until it has been examined. 19 C.F.R. §§ 142.3, 142.7 (1986).[8]

Defendants allege that Customs has not completed its inspection of the merchandise, and that there are conflicting claims to the imported property. The Central Bank of the Philippines has commenced an action in the United States District Court for the District of Hawaii seeking return of the currency. *Republic of the Philippines v. Marcos*, Civ. No. 86–0155 (D.Haw.). On March 14, 1986, the United States filed a motion to intervene, to file an answer, and a counterclaim in the nature of an interpleader in that action, in which the United States requests the District Court to determine the lawful owner of the currency and other merchandise currently in the possession of Customs. The Republic of the Philippines and the Asian and Pacific Affairs Subcommittee of the Foreign Affairs Committee of the House of Representatives have formally requested copies of all documents brought into the United States by Mr. Marcos and his party.[9] The purpose of both these requests is, in part, to investigate conflicting claims with respect to the ownership of the property claimed by plaintiffs.

Plaintiffs claim that *Fonseca v. Regan*, 734 F.2d 944 (2d Cir.1984), supports their position that Customs must relinquish the property to them. In that case, plaintiff Fonseca sought to recover possession of a suitcase containing $250,000 misdirected to a New York airport from Bogota, Colombia. Plaintiff had no intent to enter the merchandise into the United States, nor did the United States "demonstrate any colorable claim adverse to that of Fonseca, or

---

**8.** Customs laws and regulations grant Customs broad authority to search and impound merchandise arriving in the United States. *See, e.g.,* 19 C.F.R. §§ 162.5, 162.6.

**9.** On March 6, 1986 the Republic of the Philippines through counsel requested that the United States provide "all documents of any kind whatsoever ... including, but not limited to, asset books, deeds, notes, security instruments, stocks, bonds, any and all negotiable instruments and any and all records of any kind whatsoever." Letter from Mark D. Bernstein to George Roberts, Director, United States Customs Service (Mar. 6, 1986). By diplomatic notes exchanged March 15, 1986, the Republic of the Philippines and the United States entered into an agreement by which the United States agreed to provide the Philippines "with copies of documents requested by it and relevant to its investigation that are now in the possession of U.S. Customs Service and taken into custody in Honolulu on February 26, 1986. It is understood that these documents will be used only for legitimate governmental purposes." The letter from counsel and agreement were provided to the Court as exhibits by defendants at the March 15, 1986 oral argument. *See also* Convention Between the Government of the United States of America and the Government of the Republic of the Philippines with Respect to Taxes on Income, Oct. 1, 1976, Art. 26, T.I.A.S. No. 10417 (contracting parties agree to exchange information "for the prevention of fraud or for the administration of statutory provisions concerning taxes").

even the presence of a legitimate individual claimant." *Id.* at 950. In this action the property was submitted to Customs custody for entry into the United States, and there are claims adverse to plaintiffs.

Plaintiffs say Customs would be without authority to hold property even in a case where it believed the property was stolen outside the United States and entered in violation of 18 U.S.C. § 2314 (1982).[10] For the reasons stated above, the Court finds no support for this view.

Plaintiffs also contend that Customs refusal to return the property to plaintiffs violates their rights under the fourth and fifth amendments to the Constitution, and to privacy.

The Court finds there is little likelihood of success with respect to plaintiffs' fourth amendment claim. There is no fourth amendment interest with respect to information voluntarily given to a government agency; such information cannot be subject to unreasonable search and seizure.[11] *See Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973).

Plaintiffs' claim of deprivation of property without due process in violation of the Fifth Amendment is premature. Plaintiff cites as authority *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). In that case the Supreme Court applied a four-part test to determine if the length of time between seizure of property at the border and the initiation of legal process to determine rights in the property violated due process: length of delay, the reason for the delay, assertion of the claimant's right to recover the property, and prejudice to the claimant.[12] Here, the government has held the property less than three weeks. As stated *supra,* Customs says it has not finished inspecting the property, and that there are substantial indications of conflicting claims to the property. Plaintiffs have made only the barest allegation of prejudice in being deprived of use of the property.[13] *See United States v. Von Neumann,* — U.S. —, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986).

Plaintiffs present no authority, and the Court finds none, which compels Customs to release the imported merchandise to plaintiffs. The Court holds that plaintiffs have no likelihood of success, at the present time, on their mandamus claim.

2. The Privacy Claim to Enjoin Customs from Releasing Copies of the Property to Third Parties

Turning to plaintiffs' claims that their constitutional privacy rights are violated if Customs releases copies of the property to third parties, the question before the Court is whether plaintiffs assert a constitutionally protected interest in the property. Plaintiff Azurin asserts only that he executed a currency declaration form. Plaintiff Araneta alleges that he executed the entry as an "attorney-in-fact."

"Ordinarily, one may not claim standing ... to vindicate the constitutional rights of

---

**10.** 18 U.S.C. § 2314 provides in part:

Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud....

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. See *United States v. Burger,* 728 F.2d 140 (2d Cir.1984); *United States v. Noe,* 634 F.2d 860 (5th Cir.), *cert. denied,* 454 U.S. 876, 102 S.Ct. 355, 70 L.Ed.2d 186 (1981).

**11.** For this reason, and for reasons discussed *infra,* plaintiffs have no constitutional rights to privacy violated by Customs continued retention of the property.

**12.** The Court held that an 18-month delay in bringing forfeiture proceedings was reasonable since the government was diligently processing a mitigation petition and pursuing related criminal proceedings, and the claimant never indicated desire for speedy commencement of civil forfeiture proceedings.

**13.** Plaintiffs' counsel alleges the denial of access to the property has caused plaintiffs "serious personal inconvenience and concern for unlawful invasion of their rights in the property." Affidavit of Richard A. Hibey, at ¶ 6.

some third party." *Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1952). Plaintiffs make no claim that there is some "genuine obstacle" to the third party's assertion of its own rights, *Singleton v. Wulff,* 428 U.S. 106, 114–16, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976), or that the privacy rights of the third party would be "diluted or adversely affected" should that party appear. *Cf. Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1962).

Plaintiffs do not provide any reason other than "convenience" why the party-in-interest, Mr. Marcos, is not a plaintiff in this action.[14]

The Court holds that since the plaintiffs have not asserted any ownership in the property or that they have any personal privacy right that is threatened with violation by Customs, and since they have not shown that they are entitled to assert the constitutional rights of third parties,[15] there is little likelihood that they will succeed on their claim seeking to enjoin release of copies or originals of documents.

*The Public Interest and the Balance of Hardships*

Defendants argue that "[i]f the United States reneges on its promise to the new Philippine Government of President Aquino to release to a specially established Philippine commission copies of these documents for purposes of their examination and investigation, the foreign relations of this country with an important and strategically critical Far Eastern nation may be adversely affected."[16] In support of that claim defendants submitted an affidavit by Michael H. Armacost, Under Secretary of State for Political Affairs, describing the importance and extent of the relationship between the Philippines and the United States, the profound changes which have recently occurred in the Philippines, and the importance to the foreign policy of the United States to fulfill the nation's pledge to assist the Aquino government in its investigation of the Marcos assets.

Inherent in plaintiffs' argument is the claim that the public interest is better served by protecting their asserted constitutional privacy rights than by disclosing copies of the documents to third parties.

The Court recognizes that there may be circumstances in which the public interest requires that constitutional rights of individuals outweigh foreign policy concerns. However, since the Court finds that plaintiffs' constitutional rights are not threat-

---

**14.** At oral argument, there was the following colloquy with plaintiffs' attorney:

> JUDGE DiCARLO: Are you saying these gentlemen who are acting as attorneys have a privacy interest in the property? Or is their interest to get the property back in their possession?
>
> MR. HIBEY: Their purpose is to get the property back into the lawful possession of their principal, Ferdinand Marcos.
>
> . . . .
>
> JUDGE DiCARLO: My only question is privacy interest; the constitutional rights raised by the plaintiffs. Who has those constitutional rights? Are they personal ... to the people who have direct interest in the property?
>
> MR. HIBEY: My suggestion to the Court is that they are personal, but not necessarily exclusive, that they have—that there is an umbrella which covers both by virtue of the fact that the principal here is clearly identified. That instead of using a customhouse broker, which is, I understand is not an unusual way for papers to be processed, he simply used individuals within his own retinue.

> JUDGE DiCARLO: There are some situations in which a person is unable to present his own privacy claims, raise his own constitutional rights, and things such as that. Is there any reason why the actual owner of the properties in this case is unable or was unable to be a plaintiff in this action and raise the personal right of privacy for himself?
>
> MR. HIBEY: It was only a matter of convenience that caused the papers to be executed in the way that they were executed.
>
> JUDGE DiCARLO: So there was no reason why the owner of the property could not have appreared as a plaintiff, could not have asserted his own privacy rights, and could not have signed an affidavit as to how he would be individually injured, is that correct?
>
> MR. HIBEY: I think that's correct....

Transcript at 18–19.

**15.** The Court will not speculate why Mr. Marcos did not submit to the jurisdiction of the Court.

**16.** Defendants' Opposition to Plaintiffs' Motion for a Temporary Restraining Order at 25.

ened and that plaintiffs may not assert the constitutional rights of a third party, the Court holds that the public interest would be best served by denying the motion.

In view of the Court's finding that each of the above factors favors denial of the motion, the balance of the equities weighs in favor of defendants.

The motion is denied. So ordered.