# UNITED STATES *v.* VON NEUMANN

No. 84–1144.   Argued November 4, 1985—Decided January 14, 1986

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MAR-SHALL, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined, and in Parts I and II of which BURGER, C. J., joined. BURGER, C. J., filed an opinion concurring in part, *post*, p. 251. STEVENS, J., filed an opinion concurring in the judgment, *post*, p. 252.

*Alan I. Horowitz* argued the cause for the United States. With him on the brief were *Acting Solicitor General Fried, Assistant Attorney General Trott,* and *Deputy Solicitor General Frey.*

*Charles L. Birke* argued the cause and filed a brief for respondent.

JUSTICE BRENNAN delivered the opinion of the Court.

We must decide in this case whether a 36-day delay by the United States Customs Service in responding to a remission petition filed by respondent in response to the seizure of his car by customs agents deprived respondent of property without due process of law.

I

Title 19 U. S. C. § 1497[1] provides that any article not declared upon entry into the United States which by law

___

[1] Section 497, 46 Stat. 728, 19 U. S. C. § 1497, provides:

"Any article not included in the declaration and entry as made, and, before examination of the baggage was begun, not mentioned in writing by such person, if written declaration and entry was required, or orally if written

must be declared is subject to forfeiture or to a penalty equaling the value of the article. After seizure of an article by the United States Customs Service, a claimant to it has essentially two options. He may pursue an administrative remedy under 19 U. S. C. § 1618 (1982 ed., Supp. III),[2] which vests in the Secretary of the Treasury the discretionary authority to mitigate or remit the penalty or forfeiture, or he may challenge the seizure in a judicial forfeiture action initiated by the Government.[3]  19 U. S. C. §§ 1602–1604.[4]

---

declaration and entry was not required, shall be subject to forfeiture and such person shall be liable to a penalty equal to the value of such article."

[2] Section 618, 46 Stat. 757, as amended and set forth in 19 U. S. C. § 1618 (1982 ed., Supp. III), provides in pertinent part:

"Whenever any person interested in any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of this chapter, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws . . . before the sale of such vessel, vehicle, aircraft, merchandise, or baggage a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury . . . if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto."

[3] The claimant may trigger the Government's initiation of forfeiture proceedings. In *United States* v. *$8,850,* 461 U. S. 555, 569 (1983), we noted: "A claimant is able to trigger rapid filing of a forfeiture action if he desires it. First, the claimant can file an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property. See *Slocum* v. *Mayberry,* 2 Wheat. 1, 10 (1817) (Marshall, C. J.). Less formally, the claimant could simply request that the Customs Service refer the matter to the United States Attorney. If the claimant believes the initial seizure was improper, he could file a motion under Federal Rule of Criminal Procedure 41(e) for a return of the seized property."

[4] When the Jaguar was seized in this case, a customs officer could have instituted nonjudicial, summary forfeiture proceedings if the value of the car had been not more than $10,000. See 19 U. S. C. §§ 1607–1609. Congress has since raised this limit to $100,000. 19 U. S. C. § 1607 (1982 ed.,

In 1974, respondent John Von Neumann shipped to Vancouver, Canada, a 1974 Jaguar Panther automobile he purchased in Switzerland. On January 20, 1975, he and a friend picked up the car in Vancouver, obtained a release from Canadian Customs to take possession of the vehicle and also obtained a form that Von Neumann was to deliver to the Canadian Customs station at the border. Von Neumann failed to deliver the form to Canadian Customs officials. He claimed that he inadvertently drove past the Canadian Customs station because of poor visibility and inadequate directions. Instead, Von Neumann and his friend arrived at the United States border checkpoint at Blaine, Washington, where they were questioned by United States Immigration Officer Harry Perkins, a designated customs officer. Canadian Customs officials had earlier alerted United States Customs that Von Neumann's car would be crossing the border, and Perkins specifically asked Von Neumann whether he had anything to declare. When Von Neumann failed to declare the automobile, Perkins asked him into the checkpoint station and referred the matter to Customs Inspector Donald E. Morrison. Upon being asked why he had not declared the car, Von Neumann explained that he did not think a declaration was required. Morrison then seized the car pursuant to 19 U. S. C. § 1497.

That same day, January 20, Von Neumann prepared a "Petition for Remission or Mitigation of Forfeitures and Penalties Incurred," pursuant to 19 U. S. C. § 1618, explaining that he had not intended to violate United States Customs laws when he failed to declare the car. Two weeks later, on February 3, Von Neumann posted a bond for $24,500, the

---

Supp. III). Even for a seizure of property appraised at less than $100,000, the claimant has a right to a judicial determination upon posting a bond to cover costs in the sum of $2,500 or 10% of the value of the claimed property, whichever is smaller, but not less than $250. 19 U. S. C. § 1608 (1982 ed., Supp. III).

value of his car, and Customs released the vehicle pursuant to its authority under 19 U. S. C. § 1614.  On February 12, counsel for Von Neumann filed a supplement to the original remission petition.  On February 25—36 days after the petition was filed—the Seattle District Director of the Customs Service, pursuant to delegation of authority from the Secretary of the Treasury,[5] acted on Von Neumann's remission petition, and informed Von Neumann that the penalty for failure to declare the car was being reduced to $3,600.  On administrative review of this determination, the Regional Commissioner of Customs in San Francisco, on April 14, 1975, upheld the $3,600 penalty.

Having exhausted his administrative remedies, Von Neumann filed a complaint in the United States District Court for the Central District of California.  He sought cancellation of the $3,600 penalty on the ground that he had not violated § 1497.  He also requested an injunction prohibiting Customs from placing his name on a computer list of violators, and a declaration that this seizure and penalty were unlawful.  The District Court found that Von Neumann had violated 19 U. S. C. § 1497, and that seizure of the car therefore was proper.  The court also upheld the validity of the remission and mitigation procedures.  Accordingly, it entered judgment for the Government.[6]  Von Neumann appealed this de-

---

[5] The Secretary of the Treasury is authorized by statute to act on petitions for remission.  19 U. S. C. § 1618.  This authority has been delegated to District Directors of the Customs Service in some cases where the total value of the merchandise forfeited does not exceed $100,000, 19 CFR § 171.21 (1985).  At the time of this seizure, the limit was $25,000.  See 19 CFR § 171.21 (1974).

[6] The Government filed a contingent counterclaim seeking recovery of the full $24,500 in accordance with 19 U. S. C. § 1497, in the event the District Court found the mitigation invalid.  Because the District Court entered judgment in favor of the Government on the merits of Von Neumann's complaint, it denied the contingent counterclaim.  In its answer in the District Court the Government had also contended that the remission and mitigation sought and received by respondent was a settle-

cision, challenging both the procedures followed by Customs in imposing the penalty and also the penalty itself.

The Court of Appeals for the Ninth. Circuit agreed with the District Court that Von Neumann had violated § 1497. 660 F. 2d 1319, 1323 (1981). The court, however, also considered and sustained Von Neumann's claim that the 36-day delay in acting on his remission petition denied Von Neumann due process of law in violation of the Fifth Amendment. The court reasoned that speed in the handling of the remission petition, particularly where the seizure is of an automobile, is constitutionally required—that strict guidelines in responding to remission petitions are necessary "to ensure the due process rights of administrative claimants," *id.*, at 1326–1327, and concluded that Customs must "act on a petition for remission or mitigation within 24 hours of receipt," *id.*, at 1327. In addition, the court ruled, a claimant has a right to a personal appearance to present his or her claim. *Ibid.*

The Government petitioned for certiorari. We granted the petition, vacated, and remanded for reconsideration in light of *United States* v. *$8,850*, 461 U. S. 555 (1983). 462 U. S. 1101 (1983). In *$8,850*, however, the issue presented did not involve the remission procedure; rather the question was whether the Government's 18-month delay in bringing a *forfeiture* proceeding violated the claimant's right to due process of law. The Court held that due process requires a postseizure determination within a reasonable time of the seizure. We concluded that the four-factor balancing test of *Barker* v. *Wingo*, 407 U. S. 514 (1972), provides the relevant framework for determining whether a delay was reasonable. The *Barker* test involves a weighing of four factors: the length of any delay, the reason for the delay, the defendant's assertion of his right, and prejudice suffered by the defendant. Applying this test to the 18-month delay before it, the

ment, accord, and satisfaction binding on Von Neumann. The District Court did not reach this issue; nor do we.

Court in *$8,850* found no unreasonable delay, in part because a substantial portion of the delay in question was attributable to pending administrative and criminal proceedings.

On remand in this case, the Court of Appeals recognized that *$8,850* "presented a somewhat different issue from that arising in the instant case," 729 F. 2d 657, 659 (1984), because *$8,850* dealt with forfeiture rather than the remission procedure. Nevertheless, it concluded that this Court's holding in *$8,850* "reinforces our earlier view that due process rights attach to the processing of the petition for remission," 729 F. 2d, at 660, and therefore reaffirmed its holding that "due process requires Customs to act promptly in ruling on petitions for remission or mitigation under 19 U. S. C. § 1618." *Ibid.* The court recognized that its earlier attempt to set specific time limits for the processing of remission petitions was "ill-advised," *ibid.*, and held instead that the *Barker* factors should also be applied to determine whether Customs has violated due process in delaying a response to a remission petition. The court accordingly remanded the case to the District Court to consider whether the 36-day delay violated due process. In addition, however, the court made clear its view that the circumstances of this case support a finding of a due process violation. Thus, the court noted that the propriety of the length of the delay may turn on the nature of the item that has been seized, and reemphasized the point made in its earlier opinion that "special hardships [are] imposed on persons deprived of the use of their automobiles . . . ." 729 F. 2d, at 661. With respect to the reason for the delay, the Court of Appeals observed that the "record here provides no obvious reason for the Government's one-month delay in processing von Neumann's petition, although we note that Customs processes a great number of petitions each year." *Ibid.* In addition, the court pointed to the filing of the remission petition itself as the necessary assertion of the right to a speedy determination under *Barker*. Finally, the court

noted that prejudice could be established by the inconvenience of being without a vehicle for any length of time.

Arguing that due process considerations do not govern the Secretary's disposition of remission petitions, the Government petitioned for certiorari. We granted the Government's petition. 471 U. S. 1064 (1984). We now reverse.

## II

We understand respondent to argue that his property interest in his car gives him a constitutional right to a speedy disposition of his remission petition without awaiting a forfeiture proceeding. We disagree. Implicit in this Court's discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect Von Neumann's property interest in the car.[7] Respondent argues, however, that "[t]he petition for remission procedure is just one step in which it is determined whether that property interest will be extinguished via a judicial foreclosure proceeding." Brief for Respondent 8–9. We think respondent misunderstands the remission procedure's role. It is true that, as a practical matter, most forfeitures are disposed of through the administrative remission procedures,[8] but that is constitutionally

---

[7] In *$8,850* the claimant conceded that no preseizure hearing is required when Customs makes a seizure at the border. Respondent does not dispute that here, and we doubt that he could. In *$8,850* we noted that while the general rule is that "absent an 'extraordinary situation' a party cannot invoke the power of the state to seize a person's property without a *prior* judicial determination that the seizure is justified. . . . [D]ue process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture." 461 U. S., at 562, n. 12. We reasoned that such a requirement would make customs processing entirely unworkable and also found that because "the seizure serves important governmental purposes[,] a preseizure notice might frustrate the statutory purpose . . . ." *Ibid.*

[8] We noted in *$8,850* that Customs processes over 50,000 noncontraband forfeitures per year, and that in 90% of all seizures, the claimant files a petition for remission or mitigation. We further noted that the Secretary

irrelevant. We noted in *One Lot Emerald Cut Stones* v. *United States*, 409 U. S. 232, 234 (1972), that in the event an item is not declared at the border under § 1497 "[t]he Government need only prove that the property was brought into the United States without the required declaration; the Government bears no burden with respect to intent." The remission statute simply grants the Secretary the discretion not to pursue a complete forfeiture despite the Government's entitlement to one. Remission proceedings supply both the Government and the claimant a way to resolve a dispute informally rather than in judicial forfeiture proceedings. But remission proceedings are not *necessary* to a forfeiture determination, and therefore are not constitutionally required. Thus there is no constitutional basis for a claim that respondent's interest in the car, or in the money put up to secure the bond, entitles him to a speedy answer to his remission petition.

### III

While his interest in the car is the only basis on which respondent relies in his support of the Court of Appeals' decision, the Government asks that the Court adjudge the case of a claimant who relies on the argument that § 1618 itself creates a property right which cannot be taken away without due process that includes a speedy answer to a remission petition. The Government argues that the statute creates no such right. We need not address the hypothetical, however. It is abundantly clear on the record in this case that, even if respondent had such a property right, any due process requirement of timely disposition was more than adequately provided here. It is difficult, indeed impossible, to see what prejudice respondent suffered from the 36-day delay in the response. True, he was without his car for 14 days, and then, for another 22 days, without the money he

in turn grants at least partial relief for an estimated 75% of the petitions. Typically, this mitigation process terminates the dispute without the necessity of filing a forfeiture action.

had to put up to secure a bond, and Von Neumann urges the importance of automobiles to citizens in this society. But we have already noted that his right to a forfeiture proceeding meeting the *Barker* test satisfies any due process right with respect to the car and the money. In fact, it is not altogether certain that the delay dated from the filing on January 20 of the original remission petition. Respondent supplemented his remission petition and was given a final decision just 13 days later. Moreover, respondent gives no hint as to how or why even a 36-day delay in the disposition of his remission petition deprived him of the process he claims was his due in connection with that petition. He does not argue that the delay prejudiced his defense against the forfeiture, see *$8,850*, 461 U. S., at 569, and with respect to preparing his "case" for remission, that case was made at the time of filing and could not have been affected by the subsequent delay. On the record before us, the 36-day delay cannot be said to deprive respondent of due process of law.

*Reversed.*

CHIEF JUSTICE BURGER, concurring in part.

I join Parts I and II of the majority opinion, but do not agree with the Court's failure, in Part III of the opinion, to resolve an important question that is properly before the Court.

Part III declines to address the question whether a claimant may assert a due process "property" interest in the result of a discretionary petition for reduction of a statutory penalty. This question was expressly presented by our grant of the Government's petition for certiorari. The two opinions of the Court of Appeals are sufficiently ambiguous as to leave unclear whether or not that court was relying on Von Neumann's interest in the car itself, or on some interest in having his penalty reduced. In its initial opinion the Court of Appeals held that "[t]he delay in processing [respondent's] petition for remission or mitigation . . . violated his *due proc-*

*ess right to prompt consideration of his claim.*"  660 F. 2d 1319, 1327 (CA9 1981) (emphasis added).

Whether respondent has any due process right in his claim for mitigation of the statutory penalty is a question properly before the Court, and we have an obligation to address it. Resolution of this issue is not difficult.  We held in *Connecticut Board of Pardons* v. *Dumschat*, 452 U. S. 458 (1981), that a prisoner has no liberty interest cognizable under due process in a claim for a discretionary grant of parole, even though under the state parole procedure inmates were regularly and routinely granted release.  It follows directly that there can be no possible due process property interest in a discretionary grant of a reduction in a statutory penalty unless we are prepared to modify *Dumschat*.

I would confront and resolve this issue rather than relying on the Court's alternative holding that the 36-day period satisfies due process regardless of what due process "interests" were actually involved.

JUSTICE STEVENS, concurring in the judgment.

The fact that remission procedures are not constitutionally required, *ante*, at 249–250, does not shed any light on the question whether the Government has an obligation to process remission petitions with reasonable diligence.  For even though it was not obligated to do so, Congress has enacted legislation authorizing the Secretary of the Treasury to create such a procedure.  The importance of this statutory procedure is underlined by the fact that it is used to resolve almost 50,000 claims every year.  Its practical significance is also suggested by the fact that the number of at least partially successful claimants in remission proceedings is triple the number that come away emptyhanded.  This record indicates that the remission petition is a principal mechanism for resolving the dispute between the Government and the individual that frequently results from the seizure of property at our borders.

When Congress authorizes a member of the Cabinet to establish a procedure of this importance to thousands of individuals, it surely intends that the procedure will be administered in a regular and fundamentally fair way. One element of fair procedure is a requirement of reasonable diligence in processing claims. Absent clear evidence to the contrary, I would therefore construe the statute as implicitly commanding the Secretary to act diligently, and would not speculate about the possibility that a wholly arbitrary remission procedure would comply with the Due Process Clause of the Fifth Amendment.*

Nevertheless, I agree with the Court's ultimate conclusion that on this record respondent has not demonstrated that the 36-day delay in responding to his petition was unlawful. I therefore concur in the judgment.

---

*The Government concedes that, at least before the Customs Service acts on a remission petition, Congress has intended that the timeliness of the Government's response be fully reviewable. See Brief for United States 25, n. 20 ("A claimant is not powerless . . . to obtain a speedy resolution of the question of his interest in the property. If delay in processing the administrative petition for remission or mitigation is unreasonable under the Administrative Procedure Act, the claimant may file suit to attempt to compel the agency to act. 5 U. S. C. 706(1)").