UNITED STATES of America, Plaintiff,

v.

ONE (1) 1983, FIFTY–SEVEN FOOT (57′) GULFSTREAM VESSEL, M/V CHRISTY LEE, OFFICIAL DOCUMENTATION NO. 643659, Defendant.

No. 85–860–CIV–SPELLMAN.

United States District Court,
S.D. Florida,
Key West Division.

June 25, 1986.

Jonathan Goodman, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Michael Tarkoff, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPELLMAN, District Judge.

This *in rem* civil forfeiture action was tried before this Court, sitting as finder of fact, on June 11 and 12, 1986. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. The Court accepts the stipulated facts, set forth in the Bilateral Pretrial Stipulation.

The government's case in chief (i.e. establishing the requisite probable cause) was provided through the testimony of United States Customs Officer Lawrence E. Winberg and Phil Redo, who was a Monroe County Sheriff's Office detective at the time the vessel was seized.

Claimant, Johnny Ray Dowis, is incarcerated in a North Carolina State prison. He is serving a ten-year sentence for conspiracy to import marijuana. The sentence was imposed in September, 1984.

Mr. Dowis did not appear at trial. Instead, his deposition transcript was introduced in lieu of live testimony. Because Mr. Dowis is in prison, his deposition is admissible under Fed.R.Civ.Pro. 32(a)(3)(C).[1]

## FINDINGS OF FACT

On August 14, 1984, the United States Customs Service was advised that the defendant vessel (i.e. the "Christy Lee") would be departing Marathon, in the Florida Keys, for a marijuana smuggling trip off the Yucatan Peninsula, in Mexico. Specifically, the "Christy Lee" and two other vessels (the "Gladiator" and the "Dagger") were to be heading toward an area near Progresso, on the Mexican Coast.[2]

Customs Patrol Officer Winberg placed the "Christy Lee" and the other vessels on

---

1. Rule 32(a)(3)(C) permits the use of a deposition at trial if the witness is unable to attend or testify because of "age, illness, infirmity or imprisonment." Regardless of this provision, Claimant's deposition transcript is admissible in any event because he is a party. Accordingly, the government may introduce the transcript pursuant to Rule 32(a)(2).

2. The United States Coast Guard, as well as the Monroe County Sheriff's Department, received information from a confidential informant that the smuggling trip was planned.

EPIC [3] lookout. On August 21, 1984, EPIC advised Officer Winberg that the "Gladiator" had been observed unloading bales of marijuana approximately 70 nautical miles northwest of Progresso, Mexico. The marijuana bales were being loaded onto the "Gladiator" from a shrimping vessel, "Miss Dolly," which was alongside the "Gladiator." Officer Winberg testified that he did not know which specific day the "offload" took place; he merely received the information on August 21, 1984.

After the marijuana bales were seen being loaded onto the "Gladiator," the "Gladiator" was observed heading toward the Florida Keys.

The United States Customs Service, along with the Marathon branch of the Monroe County Sheriff's office, then began a surveillance of the Gulfside area of the Florida Keys. Officers Winberg and Redo repeatedly went to Mid-Keys Seafood, where the "Christy Lee" is normally docked, and to Sure Power Marine, which is adjacent to Mid-Keys Seafood, to look for the vessel.[4] If the vessel was there, they testified, they would have seen it. They did not see the "Christy Lee" at either dock on August 19, 20 and 21, 1984. The "Christy Lee" was found at Sure Power Marine, at about 6:00 p.m. on August 22, 1984. Customs Patrol Officer Winberg and Monroe County Sheriff's Office detective Redo boarded the "Christy Lee" and found marijuana residue throughout the vessel.

Customs Patrol Officer Winberg, along with Detective Phil Redo, also found three nautical charts aboard the "Christy Lee." One chart depicted the Gulf of Mexico and the Yucatan Peninsula and contained lines drawn from Progresso, Mexico—where the "Gladiator" was observed loading contraband from "Miss Dolly." Another chart, Number 411, contained an alphabetical code set in a grid pattern off the southwest Florida coast. The "Christy Lee" was then seized by the United States Customs Service.

The "Gladiator" was also seized—earlier that same afternoon—by the same law enforcement officers after they found marijuana residue throughout the "Gladiator."

As indicated, Johnny Ray Dowis' testimony was submitted by way of deposition. In brief, Mr. Dowis claims that he was not involved in marijuana smuggling and that the "Christy Lee" was at the docks in Marathon during August 20, 21 and 22, 1984. This testimony conflicts with the testimony of officers Winberg and Redo, who went to the docks several times during this period and did not see the vessel.

Mr. Dowis also purports to be an innocent owner. Initially, it is worth pointing out that Johnny Ray Dowis is serving a 10-year prison sentence in North Carolina (deposition, page 2). The sentence was given after he pleaded guilty to one count of conspiracy to import marijuana (deposition, page 2). In particular, he transported money from Florida to North Carolina as part of a deal to import and sell 85,000 pounds of marijuana (deposition, page 4).

Mr. Dowis says he "bought" the "Christy Lee" in 1983 but did not complete the paperwork until January 1984 (deposition, pages 13–14). Mr. Dowis did not pay for the vessel until 1984, though he was given possession of the "Christy Lee" in November 1983 (deposition, page 39). Regardless of the actual dates involved, Mr. Dowis never tendered a formal registration document to this Court.

Mr. Dowis claims to have been a commercial fisherman in 1983. Furthermore, he says that he earned between $85,000–$90,000 in income from fishing during 1983 (deposition, page 14). He also says that this $85,000–$90,000 in income for tax year 1983 came solely from his activities as a commercial fisherman (deposition, page 16).

Mr. Dowis paid $90,000 in cash for the "Christy Lee." He delivered the $90,000 to the seller in a briefcase containing mostly

---

3. EPIC stands for El Paso Intelligence Center.

4. The witnesses testified that they went by Sure Power Marine and Mid-Keys Seafood on an average of every three hours.

hundred-dollar bills (deposition, pages 17, 30, 31, 34, 35).

Some of the cash he used to pay the $90,000 purchase price came from his mother, his ex-wife, his fish account and friends (deposition, pages 17, 21).

The money that he received from his mother and ex-wife represented funds he had given them to hold. He does not know how much money he had given his mother and ex-wife, nor does he have any documents to reflect the amount (deposition, page 20). Similarly, he does not know how much money was in his fish house account. Regardless of the amount, the money in the fish house account did not earn any interest (deposition, page 20).

In addition, some of the money that Johnny Ray Dowis used to buy the "Christy Lee" came from "friends" that had borrowed money from him (deposition, page 21). He does not know how many people borrowed money from him, though he believes he lent money to approximately ten people (deposition, page 21). Ignoring the precise number of "borrowers" who gave him money to buy the "Christy Lee," Claimant could not name even one of these so-called "borrowers" (deposition, page 21). None of the "borrowers" signed promissory notes. He has no documentation to reflect how much money he lent—or even to whom he lent his money (deposition, pages 21–23).

The largest portion of the $90,000 came from Johnny Ray Dowis himself. He kept the cash in the safe of a home owned by the mother of a woman he was living with in Marathon (deposition, pages 17 and 23).

Johnny Ray Dowis claims that approximately $50,000–$60,000 came from this safe. He says he earned the money as a commercial fisherman in 1980 and 1981 (deposition, pages 18, 23 and 24). He also says that none of the money came from illegal drug smuggling (deposition, page 23). Despite this denial, Mr. Dowis admits that he was involved in illegal marijuana smuggling in 1979, 1980 and 1981 (deposition, pages 24, 25, 29 and 30).

In May, 1984, before the "Christy Lee" was seized, another vessel that Mr. Dowis owned was destroyed in a fire (deposition, page 67). Mr. Dowis did not, however, have any insurance on the "Christy Lee" (deposition, page 37).

Mr. Dowis says that the "Christy Lee," a 57–foot vessel that sleeps six (deposition, page 31), did not have the ability to go to Progresso, Mexico (deposition, page 64). The United States Customs officers, however, found a chart depicting the Gulf of Mexico and containing lines drawn from Progresso, Mexico aboard the "Christy Lee."

In addition to finding the nautical charts, the officers also found a shotgun aboard the "Christy Lee." Mr. Dowis concedes that the shotgun is his. He also admits that he had already been convicted of a crime by August 1984, when the shotgun was seized (deposition, page 54).

Mr. Dowis says that both the "Christy Lee" and the "Gladiator" worked out of the "Mid-keys Seafood" house in Marathon (deposition, pages 40, 65). Mid-keys Seafood is owned by Kelvin Townsend and Michael Richardson (deposition, page 47). Mr. Dowis knows that both Kelvin Townsend and Michael Richardson have recently been convicted of drug smuggling charges (deposition, page 77).

In addition to seizing the "Christy Lee" and the "Gladiator," officers Winberg and Redo also seized the "Dagger"—which the confidential informants said would be involved in the marijuana smuggling operation. Officer Winberg and officer Redo each had their own confidential informant. Although the informants were different, they each provided the same basic information regarding the marijuana smuggling operation.

All three vessels—the "Christy Lee," the "Gladiator," and the "Dagger"—were the same type of vessel (i.e. Gulfstream commercial fishing boats). All three were seized on August 22, 1984. All three were seized after the officers found marijuana residue aboard the vessels. All three were seized within a few blocks of each other on

Marathon Key. Furthermore, all three were seized within a few hours of each other. The "Christy Lee" was the last vessel to be seized.

In addition, the "Christy Lee" was "over-powered" for a commercial fishing vessel. Officer Winberg testified that the engines were larger than he would expect to find on a commercial fishing vessel. He testified that the engines are the type he would expect on a vessel used to smuggle contraband into the United States. Similarly, the vessel contained little fishing equipment when seized. In a similar vein, the "Christy Lee" had a substantial amount of expensive, sophisticated electronic gear on board.[5] This equipment, according to officer Winberg, would not be expected on a legitimate commercial fishing vessel, though it would be expected on a "smuggling" boat.

In support of his defense, Mr. Dowis produced Ray Morton, a diesel mechanic who testified that he was working on the "Christy Lee" at or about the time it was seized. Mr. Morton testified that he saw the "Christy Lee" on August 21, 1984 at approximately 4:00 p.m. and at about noon on August 22, 1984, when it arrived at Sure Power Marine for repairs. Mr. Morton testified that he unbolted the engine and was still working on the "Christy Lee" when the officers arrived. Mr. Morton did not produce any work orders, receipts or other documents to evidence his work on the "Christy Lee".

After the "Christy Lee" was seized, Mr. Dowis' attorney, Michael Tarkoff, wrote to United States Customs in Miami. He demanded immediate return of the "Christy Lee" or institution of judicial forfeiture proceedings. Mr. Tarkoff wrote three letters to Customs before Congress changed the forfeiture laws in October, 1984. Although Mr. Tarkoff made the same "release-or-forfeiture" demand in each letter, he did not provide any reasons why the vessel should be returned. At the time of his first letter (two days after the seizure),

the Fines, Penalties and Forfeiture Office of the Miami Customs Office did not even have any paperwork on the "Christy Lee."

In any event, Peggy Cumby, an acting supervisor in the Fines, Penalties and Forfeiture (F.P.F.) office, testified about the impact of the legislative changes regarding forfeiture. In particular, new notices (advising owners of their rights) needed to be sent out. These new notices were required for pending cases, such as the "Christy Lee" seizure. The F.P.F. office could not send out the new notices because they did not have them. In fact, they had not even been drafted yet. When the F.P.F. office received the new notices in December, it sent one to Mr. Tarkoff. After Mr. Tarkoff posted the requisite bond to trigger judicial forfeiture, this *in rem* action was filed.

After considering the live testimony and after reviewing Mr. Dowis' deposition, the Court makes the following findings:

1. Mr. Dowis is the owner of the "Christy Lee."

2. All three vessels were missing during the time that the confidential informants stated they would be used for the marijuana smuggling operation.

3. The United States has probable cause to forfeit the "Christy Lee" under *each* of the statutes set forth in the Complaint (19 U.S.C. § 1595a(a), 49 U.S.C. § 781 and 21 U.S.C. § 881).

4. There is no factual basis to conclude that the marijuana residue found aboard the "Christy Lee" resulted from any activity during the time that the vessel arrived at the docks in Marathon and the time it was seized.

5. No facts justify Mr. Dowis' contention that he is an "innocent owner."

6. There is no basis to support claimant's theory that the officers "planted" the marijuana residue on the "Christy Lee."

---

**5.** The record is not crystal clear concerning who actually purchased the sophisticated electronic gear on board the "Christy Lee," Johnny Ray Dowis or the ship's previous owner.

## CONCLUSIONS OF LAW

■ A forfeiture proceeding is an *in rem* action brought against seized property pursuant to the fiction that the property itself is guilty of facilitating crime. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–84, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974). To contest a forfeiture action, an individual must first demonstrate an interest in the seized property sufficient to satisfy the court of his standing as a claimant. *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars in U.S. Currency*, 661 F.2d 319, 316 (5th Cir.1981). Having found Mr. Dowis to be the owner of the "Christy Lee," this Court also concludes that he has the necessary standing to challenge the forfeiture.

Marijuana is a "controlled substance" for the purposes of 21 U.S.C. 801, *et.* seq. and is an "article" whose attempted introduction into the United States is "contrary to law" for the purpose of 19 U.S.C. § 1595(a).

■ Once the government establishes probable cause, the burden of proof shifts to the claimant to prove a defense to the forfeiture. 19 U.S.C. § 1615 (1980), *United States v. One 1975 Ford F-100 Pick-up Truck*, 558 F.2d 755, 756 (5th Cir.1977), *United States v. One 1971 Chevrolet Corvette Automobile*, 496 F.2d 210, 212 (5th Cir.1974). The claimant must prove a defense by a preponderance of the evidence. *Ford F-100 Pick-up Truck*, 558 F.2d at 756.

■ "Innocence [of the claimant], in and of itself, is an insufficient defense to forfeiture," *United States v. One 1957 Rockwell Aero Commander 680 Aircraft*, 671 F.2d 414, 417 (10th Cir.1982). *See also Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683, 690, 94 S.Ct. 2080, 2091, 2095, 40 L.Ed.2d 452 (1974). To prevail on the defense of innocence, a claimant must establish that 1) he was not involved in the wrongful activity, 2) he was not aware of the wrongful activity, and 3) he had done all that reasonably could be expected to prevent the proscribed use of his property.

*Pearson Yacht Company*, 416 U.S. at 689, 94 S.Ct. at 2094.

"To the extent that ... forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoings, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Calero-Toledo v. Pearson Yacht Leasing*, 416 U.S. at 687–88, 94 S.Ct. at 2094.

In evaluating this case, it should be noted that the United States is bringing this action under 21 U.S.C. § 881, which has a "wider reach" than the general contraband forfeiture provisions because Congress' intent "was to strengthen law enforcement in the area of drug abuse prevention." *United States v. One 1977 Cadillac Coupe De Ville*, 644 F.2d 500, 502 (5th Cir.1981). Consequently, the government's position is further strengthened because the United States' motion reflects public policy as expressly stated by Congress.

■ Mr. Dowis has *no defense* to this forfeiture proceeding. The United States has met its initial burden of demonstrating a reasonable ground for belief that the "Christy Lee" is subject to forfeiture.

■ In regard to Mr. Dowis' contention that the "Christy Lee" was in Marathon on August 20, 21, and 22, 1984 (and could not, therefore, have been loading marijuana off the Mexican Coast or the Southwest coast of Florida), this claim—even if true—is irrelevant.

The marijuana residue was found on the vessel. Regardless of whether the "Christy Lee" actually went to Mexico, the presence of the marijuana residue is established. 21 U.S.C. § 881(a)(4), one of the statutes upon which this forfeiture action is predicated, does not require that a vessel transport marijuana. To the contrary, a vessel is subject to forfeiture if it merely "possesses" the marijuana. In addition, this Court concludes that the "Christy Lee" was used to transport, or facilitate the transportation of, marijuana.

The amount of marijuana residue found is irrelevant because a vessel "is subject to forfeiture no matter how small the quantity of contraband found." *United States v. One (1) 1982 28' International Vessel,* 741 F.2d 1319, 1322 (11th Cir.1984). (forfeiture premised on two leaves and a twig of marijuana aboard the vessel).

██ Claimant also asserts, in his amended answer, the defense of illegal search and seizure. This argument fails for several reasons. First, claimant has no "Fourth Amendment" standing to challenge the search and seizure because there is no legitimate expectation of privacy in the areas where the marijuana residue was found (i.e. the ice hold and the cracks of the deck). *See, e.g., United States v. Bent,* 707 F.2d 1190, 1193 (11th Cir.1983) (crewmen on board a shrimper had no reasonable expectation of privacy in the fish hold of the vessel); *United States v. Stuart-Caballero,* 686 F.2d 890 (11th Cir.1982) (no expectation of privacy in the engine room and two forward cargo holds); *United States v. Williams,* 617 F.2d 1063 (5th Cir.1980) (no reasonable expectation of privacy in the cargo hold).

██ Second, the officers had probable cause to believe the "Christy Lee" had been outside the boundaries of the United States. The boarding and search, therefore, was an extended border search.

In regard to the "undue delay" defense, the mere fact that there was a delay between seizure of property and the initiation of a forfeiture action is hardly enough to constitute a viable defense to forfeiture. *See United States v. $8,850,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (the government's 18-month delay in filing a forfeiture action did not preclude forfeiture because the claimant's due process rights were not violated).

██ In order to determine whether a particular delay violated a claimant's due process rights, the Court must balance four factors: (1) length of delay; (2) the reason for the delay; (3) the claimant's assertion of his right; and (4) prejudice to the claimant. *United States v. $8,850,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

██ *Claimant* has the burden of establishing his right to due process under the four-part test. Claimant has not—and could not have—met his burden because he did not offer any competent evidence in regard to factors 2 and 4. The "undue delay" defense has not been sufficiently demonstrated. *See, e.g., United States v. U.S. Treasury Bills Totalling $160,916.25,* 750 F.2d 900 (11th Cir.1985) (14–month delay did not violate due process rights).

The reason for the delay is one of the most significant factors evaluated by the courts. *See, e.g., United States v. $8,850 In U.S. Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (18–month delay justified because pending criminal proceedings caused the delay); *United States v. U.S. Treasury Bills Totalling $160,916.25,* 750 F.2d 900 (11th Cir.1985) (14–month delay justified by criminal investigation).

In the instant case, the delay was caused by legislation that changed various provisions of the forfeiture laws. As reflected by the testimony of Peggy Cumby (an acting supervisor in the F.P.F. office), the new legislation required that new notices be drafted, requiring another formal notice to be sent to claimant's attorney.

The delay here was not unreasonable. In particular, the delay from August until October (when the new legislation changed the forfeiture laws) was not unreasonable. It is not reasonable to saddle the Miami Customs Office with the responsibility of implementing legislation when it had not been given the tools of implementation from Washington, D.C.

Finally, claimant offered *no* competent evidence to demonstrate how he was prejudiced by the delay. His deposition was considered by the Court. His personal appearance would not have altered the result. Moreover, a forfeiture occurs *ab initio.* Consequently, Mr. Dowis' inability to use the "Christy Lee" during the period from seizure until judgment did not prejudice

him because the vessel technically belonged to the United States—this forfeiture judgment merely confirmed what had taken place as a matter of law.

When, as here, a claimant has not shown how the delay has "hampered the claimant in presenting a defense on the merits," *United States v. $8,850*, 103 S.Ct. at 2014, the delay defense will be denied. *See, e.g., Ivers v. United States*, 581 F.2d 1362 (9th Cir.1978) (no prejudice to claimant). *See also United States v. Von Nuemann*, —— U.S. ——, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986) (government's delay in processing claimant's petition for remission of forfeiture did not violate due process rights because there is no constitutional right to a remission proceedings).

CONCLUSION

The United States demonstrated probable cause for forfeiture and Johnny Ray Dowis failed to prove a defense. Accordingly, a judgment of forfeiture in favor of the United States is warranted.[6]

---

**6.** Pursuant to Rule 58, Federal Rules of Civil Procedure, a final judgment of forfeiture will be separately entered by this Court.