Dalia FALDRAGA, Plaintiff,

v.

Harry W. CARNES, District Director of
the United States Customs
Service, Defendant.

No. 87–10018–Civ.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 23, 1987.

Rudolph Browd, Miami, Fla., for plaintiff.

Marilynn G. Koonce, Asst. U.S. Atty., Miami, Fla., for defendant.

JAMES LAWRENCE KING, Chief Judge.

THIS CAUSE arises before the Court upon Defendant United States Customs Service's ("Customs") motion to dismiss plaintiff's complaint.

The plaintiff, Dalia Faldraga, instituted this action on April 9, 1987, alleging two grounds for the return of her vessel. As to her first claim, plaintiff alleges that the length of time of the vessel's seizure constitutes a violation of her due process rights under the fifth amendment. Regarding her second claim, the plaintiff seeks an injunction staying all summary forfeiture proceedings claiming that Customs' demand for the posting of a $5,000 certified check or money order to institute judicial proceedings, in accordance with 19 U.S.C. § 1608 (West Supp.1987), was arbitrary, unreasonable and unconscionable; thus, a violation of her rights to equal protection. After a careful review of both claims the court grants the defendant's motion to dismiss.

## I. PROCEDURAL HISTORY OF THIS ACTION

The plaintiff's vessel, "Mr. Rainbow," was seized by U.S. Customs officers on

August 4, 1986, when the officers found a residue of what turned out to be marijuana. The plaintiff, on October 3, 1986, filed a Petition for Remission or Mitigation pursuant to 19 U.S.C.A. § 1618 (West Supp.1987) alleging that she was an innocent owner. On January 16, 1987, plaintiff's counsel, sent a letter to the Customs Director, requesting Customs to consider plaintiff's Petition for Remission or Mitigation administratively within thirty days or, if the thirty day period could not be met, to institute forfeiture proceedings. Customs responded stating that the administrative procedure could not be completed within 30 days as requested.

Customs enclosed with its response letter a waiver form which allowed the plaintiff to elect one of two remedies: (1) the plaintiff could either proceed with the administrative forfeiture proceedings, "which would begin with the publication of a notice of seizure and intent to forfeit as provided in section ... 19 U.S.C. 1607," or (2) the plaintiff could "REQUEST THAT THE CUSTOMS SERVICE COMMENCE ADMINISTRATIVE FORFEITURE PROCEEDINGS IMMEDIATELY." *Id.* (emphasis supplied in original). Plaintiff's counsel informed Customs on March 13, 1987 that the plaintiff had elected the second option. On March 20, 1987, Customs sent, by certified mail, another letter notifying the plaintiff of the summary forfeiture proceedings and setting out in detail the statutory scheme and the plaintiff's rights with respect to it.

## II. THE STATUTORY SCHEME

### A. Background

Forfeiture actions have a rich history in American and English common law. They first arose with respect to an object which caused an accidental death of a King's subject and this English common law practice had its roots in pre-Judeo-Christian times. The object of death, the *deodand* (literally "given to god"), needed to be expiated of the evil which it committed. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679, 680–82, 94 S.Ct. 2080, 2089–2090, 2090–91, 40 L.Ed.2d 452 (1974). Although

deodands were never part of the common law tradition of the United States, *Id.* at 682–83, 94 S.Ct. at 2091–92, *in rem* actions were available against commodities and vessel used in violation of customs law. *Id.*

In *Calero-Toledo* the Supreme Court found the pre-hearing seizures of property to be in general constitutionally permissible because of the "extraordinary situation" present in the government's fight against illicit drug activity and the transient nature of the property involved. *Id.* at 677–80, 94 S.Ct. at 2088–90. The Court, however, noted that certain circumstances may exist where pre-hearing seizures are unconstitutional:

> "[where] an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive."

*Id.* at 689–90, 94 S.Ct. at 2094–95. (footnotes and citations omitted). *Accord United States v. United States Coin Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (finding that the forfeiture statutes were intended "to impose a penalty only upon those who are significantly involved in a criminal enterprise." *Id.* at 721–22), 91 S.Ct. at 1045; *Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886) ("We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal."); *see generally* Strafer, *Civil Forfeitures: Protecting The Innocent Owner,* 37 U.Fla.L.Rev. 841 (1985).

### B. Background of Summary Forfeiture Procedure

Congress created summary forfeiture proceedings in 1844, to allow the government to pursue summary proceedings in cases involving $100 or less. *See* Act of

April 2, 1844, ch. 8, 5 Stat. 653 (1844). *See generally United States v. United State Currency in the Amount of $2,857*, 754 F.2d 208 (7th Cir.1985); *United States v. One Tintoretto Painting Enitled "The Holy Family With Saint Catherine And Honored Donor"*, 691 F.2d 603, 605 (2d Cir.1982). Since that time Congress has amended the monetary amounts at various times to increase the viability of forfeiture proceedings in drug related crimes. In 1984 Congress, as part of the Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 98 Stat. 2053 (1984) (codified as amended at 19 U.S.C.A. § 1607 (West Supp. 1987)), raised the monetary amount to $100,000 or less. 19 U.S.C. § 1607 (West Supp.1987). Congress' intent in raising the monetary limits of sections 1607 and 1608 is in line with its intent "to enhance the use of forfeiture, and in particular, the sanction of criminal forfeiture, as a law enforcement tool in combatting two of the most serious crime problems facing the country: racketeering and drug trafficking." S.Rep. No. 98–225, 98th Cong., 2d Sess. 191, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3374.

### C. Summary Procedures under 19 U.S.C. §§ 1602–1620

When Customs seizes a "vessel, vehicle, aircraft, merchandise, or baggage" 19 U.S. C.A. § 1607(a) (West Supp.1987) which is worth $100,000 or less, the agency "shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same." 19 U.S.C. A. § 1607(c) (West Supp.1987). The language of 1607 mandates Customs to proceed under the statutory scheme.

This statutory scheme, as it has been interpreted by the Supreme Court, provides an interested claimant with at least three courses of action. First, if the agency delays in filing for forfeiture, a "claimant can file an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property." *United States v. Von Neumann*, 474 U.S. 242, 106 S.Ct. 610, 612, n. 3, 88 L.Ed.2d 587 (1986) (quoting *United States v. $8,850*, 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76

L.Ed.2d 143 (1983)) (citing *Slocum v. Mayberry*, 15 U.S. (2 Wheat.) 1, 10, 4 L.Ed. 169 (1817)).

The claimant's second option allows the plaintiff to petition the Commissioner of Customs for remission or mitigation within 30 days of the seizure. *See* 19 U.S.C.A. § 1618 (West Supp.1987); 19 C.F.R. § 171.12 (1987). The power to grant or deny the claimant's petition rests solely within the discretion of the Commissioner of Customs and the Commissioner's discretion is not reviewable by a federal court. 19 U.S.C.A. § 1618 (West Supp.1987); *See Jary Leasing Corporation v. United States*, 254 F.Supp. 157, (E.D.N.Y.1966) (quoting *United States v. One 1961 Cadillac*, 337 F.2d 730, 731–33 (6th Cir.1964)). When the property is worth more that $100,000 and the claimant does not receive a response within a constitutionally permissible time, *see United States v. 8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), she may institute an action in federal district court claiming a violation of her due process rights.

A claimant's final statutory option is available only if the property seized is within the ambit of 19 U.S.C.A. § 1607 (West Supp.1987). If so the claimant has the right to a judicial forum to determine the issues surrounding the forfeiture if she posts the requisite bond. 19 U.S.C.A. § 1608 (West Supp.1987). In order to obtain this judicial forum, the claimant must post her bond within 20 days from the date of the first publication of the notice of seizure. 19 U.S.C.A. § 1608 (West Supp. 1987); 19 C.F.R. § 162.45(a) (1987). The claimant is required to post a bond for "$5,000 or 10 percent of the value of the claimed property, whichever is lower." 19 U.S.C.A. § 1608 (West Supp.1987). The purpose of the bond is to cover the costs and expenses of the proceedings to obtain condemnation. If the outcome of the judicial proceeding is in the claimants favor, the bond is returned. If the claimant can prove indigency the bond requirement will be waived. 19 C.F.R. § 162.47(e) (1987).

If no claim is filed or a bond is not posted within the 20 day period, then the property is declared forfeited by the appropriate cus-. toms officer. 19 U.S.C.A. § 1609 (West Supp.1987).

### III. THE FORFEITURE LAW AS APPLIED IN THIS INSTANCE

#### A. No Subject–Matter Jurisdiction Over Count I

 This Court has no subject matter jurisdiction to determine Count I of plaintiff's complaint. While a district court has jurisdiction to determine whether it in fact has jurisdiction, *see generally United States v. New York Telephone Company,* 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), this Court concludes that plaintiff's failure to follow the statutory scheme, 19 U.S.C.A. §§ 1601–1620 (West Supp.1987), leaves this Court without subject-matter jurisdiction to review whether Customs has violated the plaintiff's due process rights with respect to how long the vessel has been seized. The plaintiff's first claim alleges that the length of time, from the seizure in August of 1986 to the filing of her complaint in this court on April 8, 1987, violates her due process rights. In essence, she is claiming that the government has effected a taking of her property right to the vessel without due process of law.

The Supreme Court has recently addressed the constitutional ramifications of the length of a seizure and the subsequent determination of the property's status in *United States v. Von Neumann,* 474 U.S. 242, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986) and in *United States v. $8,850,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). Both cases involved the forfeiture laws of 19 U.S.C. § 1601, et seq. In *Von Neumann* and *$8,850* the Court applied the *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), four-part balancing test. Although those cases did not involve the summary procedure process, 19 U.S.C.A. §§ 1607–1609 (West Supp.1987), the *Barker v. Wingo* analysis would apply if the government failed to act on the petition for remission or mitigation within a constitutionally mandated time, or if the

government failed to institute summary proceedings. The facts of this case indicate otherwise. The government, with the agreement of the plaintiff, did institute summary proceedings, thereby giving the plaintiff her opportunity to a judicial forum upon the posting of a cost bond. The Supreme Court in *United States v. Von Neumann,* 474 U.S. 242, 106 S.Ct. 610, 613, 88 L.Ed.2d 587 (1986), noted the summary procedure under 19 U.S.C. § 1607 and the claimant's ability to trigger a judicial determination. *Id.* at 612, footnote 4.

This court holds, however, that a claimant must comply with the statutory procedure to obtain a judicial forum and, thus, finds no need to conduct a *Barker* analysis here. This court bases its conclusion on those courts who have similarly dismissed for lack of subject matter jurisdiction, actions involving an analogous Internal Revenue forfeiture scheme. 26 U.S.C. § 7325 (West Supp.1987).

In *Glup v. United States,* 523 F.2d 557 (8th Cir.1975), the Eighth Circuit found that the claimant's failure to post a bond in accordance with an I.R.S. code provision denied the district court of subject matter jurisdiction. *Id.* at 559. The *Glup* court found that Congress' bond posting requirement was a prerequisite to the triggering of judicial forum. *Id.* The *Glup* court quoted from the Sixth Circuit's treatment of the same code provision in *United States v. Filing,* 410 F.2d 459, 460 (6th Cir.1969), where the *Filing* court opined:

> Suffice it to say that he was without jurisdiction to proceed on the motion to return the property seized. Congress has provided an adequate remedy for persons claiming an interest in property involved in a forfeiture proceeding. 26 U.S.C. § 7325. By exhausting that remedy a claimant may obtain a *plenary* hearing in the District Court and a judicial review of the validity of the forfeiture.

*Id.* at 461. *See also Quick v. United States,* 771 F.2d 1291 (9th Cir.1985) (claimant's action was dismissed for failure to timely file in a case involving firearms and 26 I.R.C. § 7325 (1982)); *United States v. Filing,* 410 F.2d 459, 460 (6th Cir.1969)

(claimant's failure to post a bond barred the district court from hearing the case for lack of jurisdiction); *United States v. Amore*, 335 F.2d 329, 331 (7th Cir.1964) (district court had no jurisdiction to enter a turnover order when claimant had notice but did not post a timely bond to proceed in a judicial setting); *Epps v. Bureau of Alcohol, Tobacco & Firearms*, 375 F.Supp. 345 (E.D.Tenn.1973) (claimant's actions of notifying the agency and offering to pay costs, if so assessed, constituted compliance with the forfeiture statutory scheme thereby conferring jurisdiction of the district court).

A three-judge panel similarly dismissed for lack of subject matter jurisdiction in *TAC Amusement Company v. Mitchell*, 330 F.Supp. 27 (E.D.La.1971), a case where plaintiffs' gambling devices were seized by the F.B.I. and subject to summary forfeiture under 19 U.S.C. §§ 1607–1610. The plaintiffs sought injunctive relief because they would have had to post a bond for each gambling machine seized. In the case of plaintiff TAC that would have required a $250 bond for each of 217 machines, for a total bond of $54,250. *Id.* at 29. The three-judge panel dismissed the plaintiffs claims holding that the plaintiffs were first required to exhaust their administrative remedy. The court also noted that the plaintiffs "had failed to make any factual showing to support their contention that the administrative procedures available to them [were] so inadequate or oppressive as to excuse their failure to exhaust those remedies." *Id.* Accord *Bedenbaugh v. National Surety Corporation*, 227 F.2d 102 (5th Cir.1955); *Rice v. Wall*, 213 F.2d 693 (6th Cir.1954); *Hewitt v. National Surety Corporation*, 130 F.Supp. 110 (N.D.Ga.1955); *Morgan v. United States*, 107 F.Supp. 501 (W.D.Ky.1952).

The same situation exists in this case. The plaintiff was bound to follow the procedure of the statute in order to obtain a judicial forum. If this Court were to hold otherwise, the statutory proscriptions would most likely never be followed. This Court does not have the power to usurp the role of Congress to expand and contract federal jurisdiction. *Snyder v. Harris*, 394 U.S. 332, 338, 342, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969). *See* C. Wright *Federal Courts* 27 (1976); *Edwards v. Selective Service Local Board No. 111*, 432 F.2d 287 (5th Cir.1970).

## PART IV. PLAINTIFF'S CONSTITUTIONAL CHALLENGES

In Count II of her complaint, the plaintiff alleges that the requirement of posting a $5,000 bond before proceeding in a judical forum is unconstitutional. Her challenges are two-fold. The plaintiff first contends that the bond posting requirement deprives her of the fundamental right to access to the courts. She contends that this lack of access to the courts is a violation of her right to procedural due process. Second, the plaintiff asserts that she is being denied her right to equal protection of the laws, because she must pay a fixed bond amount. For the reasons that follow, each of these challenges fail.

## 1. PLAINTIFF IS NOT BEING DENIED A FUNDAMENTAL RIGHT

■ The plaintiff asserts that the bond requirement of 19 U.S.C.A. § 1608 (West Supp.1987), deprives her of what she claims is a fundamental right to access to the courts. Whenever the government seeks to deprive "any person of life, liberty or property" it cannot do so "without due process of law." U.S. Const. amend. V. As in every instance where a governmental taking has occurred, the plaintiff here has a fundamental right to due process of law before the government can forfeit her vessel. *Boddie v. Connecticut*, 401 U.S. 371, 374, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). The federal government cannot deny a fundamental right unless it shows the law depriving the right serves a compelling governmental interest. The plaintiff's claim here fails, however, because Congress has created a statutory scheme where the plaintiff is afforded her fundamental right to due process. *See supra* Part II.

The plaintiff was afforded the fundamental right of the opportunity to be heard. In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) the Court reiterated the principle that reasonable procedural rules do not deprive a litigant of her fundamental right. "The State may erect [a] reasonable procedural requirement for triggering the right to an adjudication, be they statutes of limitations, or, in an appropriate case, filing fees." *Id.* at 437, 102 S.Ct. at 1158 (citations omitted); *Boddie,* 401 U.S. at 378, 91 S.Ct. 786.

The Supreme Court has framed the plaintiff's "access to the court" argument in a procedual due process analysis, i.e., as "the opportunity to be heard ... at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (quoting *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914)). In *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the Court reiterated this principle:

> that an individual be given an opportunity for hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. In short, 'within the limits of practicability,' a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause.

*Id.* at 378–79, 91 S.Ct. at 787. (citations omitted). *But cf. Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679, 94 S.Ct. 2080, 2089–2090, 40 L.Ed.2d 452 (1974) and a discussion of same *supra* Part II, A.

The summary forfeiture procedure did not deny the plaintiff the procedural due process opportunity to be heard at a meaningful time or in a meaningful manner. Section 1615 of Title 19 places the burden of proof on the claimant *"provided,* [t]hat probable cause shall be first shown." *Id.* This rebuttable presumption of correctness which attaches to the seizure has been held to be constitutional in light of the civil nature of the proceedings. *See United States v. One 1970 Pontiac GTO, 2–Door Hardtop,* 529 F.2d 65 (9th Cir.1976). The burden falls on the claimant to demonstrate her innocence. *Wood v. United States,* 41 U.S. (16 Pet.) 342, 10 L.Ed. 987 (1842); *United States v. One 1983, 57–Foot Gulfstream Vessel,* 640 F.Supp. 667, 672 (S.D.Fla.1986). The plaintiff is not contesting the probable cause established in the seizure. Undisputably the Coast Guard found marijuana in the Mr. Rainbow. The burden shifted to the plaintiff to establish that she was truly an innocent owner and had done all that was reasonably expected to prevent the illegal use of her vessel. *One 1983, 57–Food Gulfstream Vessel,* 640 F.Supp. at 672; *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683, 690, 94 S.Ct. 2080, 2091, 2095 (1974).

The requisite posting of the bond cannot be said to deny plaintiff her opportunity to be heard at a meaningful time and manner. The requirement is consistent with the presumption of correctness under section 1615 and Congress' intent to better utilize summary forfeitures. If the plaintiff were to have prevailed in her claim, the bond would have been returned to her. Requiring her to post a bond was Congress' way to ferret out unmeritorious claims. In the case of indigency the bond requirement would have been waived.

## 2. PLAINTIFF'S EQUAL PROTECTION CLAIM

■ Plaintiff alleges that she is being unfairly singled out because she is subject to summary proceedings, and therefore required to post the bond, only because the value of the vessel is under $100,000. This equal protection claim fails because a rational basis for the bond requirement exists. She is not being singled out in a suspect category of race, nationality, or alienage. *Shapiro v. Thompson,* 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969). When Congress establishes classifications like these, the law is constitutional so long as it has a rational justification. *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Flemming v. Nestor,* 363 U.S. 603, 611–12, 80 S.Ct. 1367, 1372–73, 4 L.Ed.2d 1435

(1960). This court concludes that there is a rational basis for the bond requirement.

As noted earlier, summary proceeding have long been part of our history. Congress specifically intended to better utilize these proceeding in its war against drug smuggling. *See* S.Rep. No. 98–225, 98th Cong., 2d Sess. 197, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3380. The Senate Report states Congress' rationale in raising the limits of the cost bond:

> Under current law, this bond is set at $250, an amount so low that it neither acts to discourage the filing of clearly frivolous suits nor reflects the substantial costs to the government in pursuing a judical forfeiture.... This increased bond ... will apply to cases involving property of significantly greater value than under present law.

S.Rep. No. 98–225, 98th Cong., 2d Sess. 218, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3401.

Judge Learned Hand addressed the issue in *Colacicco v. United States,* 143 F.2d 410 (2d Cir.1944). He recognized that the posting of the cost bond preserved the integrity of the summary procedure: "It would indeed have been fair to provide that claimant should always be obliged to secure the Treasury against the expense of a proceeding which turned out to have been unnecessary." *Id.* at 411–12. The instant case presents the very issue Congress intended to rectify under 19 U.S.C.A. § 1608 (West Supp.1987). The purpose of posting a bond is to deter those claimants with frivolous claims, or to state it alternatively, to encourage those claimants with meritorious claims to recover what is rightfully theirs. Without the bond requirement, the federal courts would be further congested because claimants would bring the summary process into a judicial forum without hesitation.

## V. CONCLUSION

This Court holds that the bond requirement, in this case, did not deny the plaintiff her constitutional rights of equal protection or the process due her. The summary forfeiture statutory scheme afforded her an opportunity to a judicial hearing. She was more than adequately notified of the process and the consequences of not proceeding accordingly. If it were the case, which it is not, that she could not have afford to post the cost bond, that requirement would have been waived. A rational relationship exists between the requirement of posting the bond and the opportunity to obtain a judicial forum instead of proceeding with the summary forfeiture. The plaintiff cannot now attempt to usurp this statutory scheme which does not violate her constitutional rights.

Accordingly, after a careful review of the record, and the Court otherwise being fully advised, it is

ORDERED and ADJUDGED that the Defendant's Motion to Dismiss be, and the same is hereby, GRANTED, with prejudice.