# United States Court of Appeals
## For the First Circuit

---

No. 02-1525

LUIS GINES-PEREZ,
Plaintiff, Appellant,

v.

RAYMOND W. KELLY, COMMISSIONER, UNITED STATES CUSTOMS SERVICE,
Defendant, Appellee.

---

ONE 34' SCARAB VESSEL,
Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Luis Gines-Perez on brief pro se.
H.S. Garcia, United States Attorney, Miguel Fernandez, Assistant United States Attorney, Chief, Civil Division, and Jose Javier Santos Mimoso, Assistant United States Attorney, on brief for appellee.

---

June 27, 2003

---

**SELYA**, **Circuit Judge**.  Plaintiff-appellant Luis Gines-Perez appeals from the district court's entry of summary judgment in favor of Raymond W. Kelly, Commissioner of the United States Customs Service (the Service).  The underlying case involves the Service's seizure of a boat belonging to the appellant on the ground that a culpable connection existed between the boat and certain money laundering and drug-trafficking activities.  See 18 U.S.C. § 1956; 21 U.S.C. § 841.  The appellant claims that the Service's actions violated the Due Process Clause of the Fifth Amendment.  We agree.

## I.

The genesis of this matter can be traced to October 20, 1998, when the government obtained a seizure warrant for the appellant's boat (a thirty-four foot Wellcraft Scarab III).  The following day, the Service took possession of the boat. On October 29, it notified the appellant of the seizure by letter.  This missive stated that the government had reason to believe that the vessel had been purchased with the proceeds of unlawful activity, and therefore, that it was forfeitable.  The letter informed the appellant that he could request relief from the impending forfeiture by petitioning for remission within thirty days of the date of the letter.  See 19 U.S.C. § 1618.

When the appellant did not file a petition for remission within the stipulated period, the Service sent him a second letter

-2-

in which it advised that a notice of seizure and intent to forfeit would be published on and after May 5, 1999. The letter also stated that should the appellant wish to stay the administrative forfeiture proceedings and place the matter before a court, he would have to file a claim and post a bond within twenty days from the date of the first publication.

The appellant responded to this letter within the twenty-day period, acknowledging the "claim and cost bond" requirement. His letter stated that he had decided to apply for in forma pauperis (IFP) status so as to dispense with the necessity for posting a bond. The appellant attached a completed IFP application to this letter.

Over eight months later — without either ruling on the IFP application or referring the case to the United States Attorney for the initiation of judicial proceedings — the Service informed the appellant, by letter dated February 7, 2000, that it had decided not to pursue forfeiture, but, rather, would release the boat to the appellant. The Service added, however, that the appellant would have to (a) pay the costs associated with the seizure and storage of the boat, and (b) sign an indemnity agreement. The letter admonished that if no action were taken toward "the remission of the vessel" within thirty days, the Service would commence administrative forfeiture proceedings by

publishing a first notice of intent to forfeit at some time during March of 2000.

The appellant apparently did not accept the offer. In a follow-up letter, under date of March 29, 2000, the Service informed him that since he had not paid the seizure and storage costs, the boat would be summarily sold pursuant to 19 U.S.C. § 1612(b), and that he would be entitled to any money leftover after payment of the costs. The appellant responded by bringing this suit on June 8, 2000. Approximately three weeks later, the Service reported that it had sold the boat, that there were no excess proceeds, and that it regarded the case as closed.

## **II.**

Under the customs laws, which apply here, seized property worth $500,000 or less may be subject to administrative forfeiture without judicial involvement. See 19 U.S.C. § 1607. The agency seizing the property must give notice of the seizure to all parties in interest and must inform them of the applicable procedures for contesting the proposed forfeiture. Id. To initiate administrative forfeiture proceedings, the agency must publish notice of intent to forfeit for three successive weeks in a newspaper of general circulation in the judicial district in which the seizure occurred. See id.; see also 19 C.F.R. § 162.45(b)(1).

In order to contest such a forfeiture, an interested party must file a claim and cost bond within twenty days of the

-4-

date of the first publication of the intent to forfeit.  19 U.S.C. § 1608.  The requirement for a cost bond is not inflexible:  it is routinely waived upon proof that a party is unable to afford the cost of the bond.  19 C.F.R. § 162.47(e).  The timeous filing of a claim, accompanied either by a cost bond or by proof of IFP status sufficient to secure a waiver, obliges the agency to refer the matter to the United States Attorney for the commencement of judicial forfeiture proceedings.  19 U.S.C. § 1608.  If, however, no satisfactory filing is made with the twenty-day period, the agency may declare the property forfeit.  Id. § 1609(a).

As an alternative to litigation, an interested party may petition the Secretary of the Treasury (the Secretary) for remission or mitigation.  Id. § 1618.  The remission procedure "grants the Secretary the discretion not to pursue a complete forfeiture despite the Government's entitlement to one."  United States v. Von Neumann, 474 U.S. 242, 250 (1986).  Although this procedure is an informal — and often helpful — way for the parties to resolve a dispute, remission proceedings are not required in order to obtain a forfeiture determination.  See id.

## III.

The district court decided this case in favor of the Service on the ground that the appellant had not timely responded to the notice of intent to forfeit.  The appellant attacks this determination.  He asseverates in this venue, as he did below, that

his claim and IFP application were timely filed but that the Service improperly ignored it. Moreover, he says that once a seasonable claim and IFP application were filed, the Service had no license to proceed as it did and that its course of action violated his due process rights.

The Service disagrees with the appellant's bottom-line position. Importantly, however, it acknowledges that the appellant filed a claim and IFP application and does not suggest that these filings were untimely or otherwise deficient. Thus, the Service does not seek to defend the district court's determination that the appellant had not timely responded — and the chronology set forth above, see supra Part I, leaves no doubt but that the claim was timely filed. The question, then, is whether the district court's decision is supportable on some alternative ground.

The Service sees the case this way. It points out that it had changed its mind about proceeding with forfeiture and had decided to abort the seizure and release the vessel to the appellant. It then notified the appellant of its decision to sell the vessel under 19 U.S.C. § 1612(b) in order to recoup its out-of-pocket costs. The appellant did not interpose any objection to the sale. Accordingly, the Service posits, it provided all the process that was due.

This argument does not withstand scrutiny. The principal problem is that the manner in which the Service proceeded

effectively deprived the appellant of his vessel and held him liable for seizure and storage costs without any reasoned determination either that the boat was subject to forfeiture or that the appellant was legally liable to reimburse the government's costs. We explain briefly.

Section 1612(b) provides, in pertinent part, as follows:

> If the Customs Service determines that the expense of keeping the vessel . . . is disproportionate to the value thereof, the Customs Service may promptly order the destruction or other appropriate disposition of such property under regulations prescribed by the Secretary.

19 U.S.C. § 1612(b). One of the purposes of section 1612 is to substitute a cash fund for a vessel or other seized piece of property subject to large custodial costs. 1 David B. Smith, Prosecution and Defense of Forfeiture Cases ¶ 8.04, at 8-28 (2000). As a result, "[t]he proceeds of [a] sale [under section 1612] shall be held subject to the claims of parties in interest in the same manner as the seized property would have been subject to such claims." 19 C.F.R. § 162.48(a). So viewed, a sale under section 1612 does not — and should not — amount to a final decision concerning a claimant's right to the property. To the contrary, such a sale is an intermediate step pending the making of such a decision.

Here, the Service made no claim of disproportionate expense. Instead, it took the position that, because the appellant

could not afford to repay the costs incurred for seizure and storage, the boat had to be sold. This was a peculiar use of section 1612 — and in all probability an improper one. To make matters worse, the Service seems to have treated the sale of the boat under section 1612 as a final disposition of the case. Once it had sold the boat, the Service informed the appellant that there were no proceeds in excess of its bill for costs and told him that it was closing its file. We think that this was presumptuous — and without foundation in the law.

To be sure, it appears that the Service did not intend to treat the sale of the vessel as an actual determination that the vessel was forfeitable. Quite the opposite is true; the Service told the appellant that it had decided not to pursue a forfeiture. Nevertheless, the effect of the Service's action was the same as if it had decreed that the boat was forfeitable. The closing of the case meant that the appellant had lost both his property and his right to challenge that loss.

As a corollary, the Service had unilaterally decided that the appellant was responsible for the seizure and storage costs without first having secured a determination that the boat was forfeitable. This was a fatal omission: had the appellant prevailed in a forfeiture action, he likely would not have been liable for these costs. See, e.g., United States v. One 1986 Ford Pickup, 56 F.3d 1181, 1184 (9th Cir. 1995) (in which the government

conceded that it could not tax seizure and storage costs against a party who prevailed in a forfeiture action even though there had been reasonable cause for the initiation of the forfeiture proceedings); United States v. One 48 Ft. White Colored Sailboat, 59 F. Supp. 2d 362, 366 (D.P.R. 1999) (holding that a claimant who prevailed in a forfeiture action was not responsible for storage and maintenance costs incurred while her property was in the custody of the government).

Based on the foregoing, we conclude that the way in which the Service proceeded deprived the appellant of his property without due process. As said, a sale under section 1612 usually is an interlocutory remedy, leaving a claimant with a post-sale right to argue that he is entitled to the proceeds on the basis that the property originally seized was not forfeitable. The fact that there were no proceeds leftover from the sale of the boat in the instant case should not change this result; before the Service closed the case, it should have provided the appellant with a proceeding in which to argue that the boat was not forfeitable and that he was not liable for any of the seizure and storage costs, and that the proceeds of the sale should go to him (rather than to defray seizure and storage costs).

The Service offers no real rationale in support of its decision to treat the sale under section 1612 as a final determination that the appellant had no ownership interest in the

boat.  Instead, it focuses on the appellant's supposed failure to object to the sale of the boat under section 1612.  This misses the point.  The issue here is not the appellant's objection to the sale, but the proper distribution of the proceeds from the sale.  The lack of objection may operate as a waiver as to fact of the sale — we need not decide this today — but not as to the proper distribution of the proceeds.  Even if the appellant had acquiesced in a section 1612 sale,[1] we question how any such acquiescence could constitute either an abandonment of a right to the sale proceeds or an agreement to assume liability for the seizure and storage costs.

## IV.

We need go no further.  Concluding, as we do, that the appellant is entitled to his day in court, we vacate the judgment below and remand the matter for further proceedings consistent with this opinion.  On remand, the district court should provide the appellant with the process that the Service neglected to give him: an opportunity to show that the boat is not forfeitable and that he therefore should not be expected to bear the costs of seizure and storage.  See Boero v. DEA, 111 F.3d 301, 306 (2d Cir. 1997) (explaining that "when the government is responsible for a . . .

---

[1]In this regard, we note that the appellant filed the instant action on June 8, 2000 — shortly after receiving notice of the Service's intent to sell and well before he received notice that the sale had been consummated.

claimant's inability to present a claim . . . a hearing on the merits is available in the district court") (citations and internal punctuation omitted).

         <u>**Reversed and remanded**</u>.