(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ALVAREZ, COOK COUNTY STATE'S ATTORNEY *v.* SMITH ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 08–351.   Argued October 14, 2009—Decided December 8, 2009

Illinois law provides for forfeiture of movable personal property used to facilitate a drug crime, permits police to seize the property without a warrant, and allows the State to keep the property nearly five months before beginning judicial forfeiture proceedings.  Respondents, six individuals who had cars and cash seized under that law, brought this federal civil rights action, claiming that the failure of the State to provide a speedy postseizure hearing violated the federal Due Process Clause.  The District Court dismissed the case based on Circuit precedent, but, on appeal, the Seventh Circuit departed from that precedent and ruled for respondents.  This Court granted certiorari to review the  Seventh Circuit's due process determination, but at oral argument the Court learned that all of the actual property disputes between the parties had been resolved.

*Held:*

  1. The case is moot.  The Constitution permits this Court to decide legal questions only in the context of actual "Cases" or "Controversies," Art. III, §2, and an actual controversy must exist at all stages of review, not just when the complaint is filed, *Preiser* v. *Newkirk*, 422 U. S. 395, 401.  Here there is no longer any actual controversy regarding ownership or possession of the underlying property.  There is no claim for damages before this Court; there is no properly certified class or dispute over class certification; and this case does not fit within the category of cases that are "capable of repetition" while "evading review."  Only an abstract dispute about the law remains. Pp. 4–6.

  2. The judgment below is vacated.  In moot cases, this Court normally vacates the lower court judgment, which clears the path for re-

litigation of the issues and preserves the rights of the parties, while prejudicing none by a preliminary decision. *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 40. Where mootness is the result of settlement rather than happenstance, however, the losing party forfeits the equitable remedy of vacatur. U. S. *Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, 513 U. S. 18, 25. This case more closely resembles mootness through happenstance than through settlement. In *Bancorp*, the party seeking review caused the mootness by voluntarily settling the issue contested throughout the litigation. Here, the Court believes that the presence of the federal case played no significant role in the termination of plaintiffs' state-court forfeiture proceedings. Plaintiffs' forfeiture cases took place with no procedural link to the case before this Court; apparently terminated on substantive grounds in their ordinary course; and, to the Court's knowledge, no one raised the procedural question at issue here in those cases. This Court therefore concludes that it should follow its ordinary practice and order vacatur. Pp. 6–9.

524 F. 3d 834, vacated and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, GINSBURG, ALITO, and SOTOMAYOR, JJ., joined, and in which STEVENS, J., joined as to Parts I and II. STEVENS, J., filed an opinion concurring in part and dissenting in part.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–351

## ANITA ALVAREZ, COOK COUNTY STATE'S ATTORNEY, PETITIONER *v.* CHERMANE SMITH ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[December 8, 2009]

JUSTICE BREYER delivered the opinion of the Court.

We granted certiorari in this case to determine whether Illinois law provides a sufficiently speedy opportunity for an individual, whose car or cash police have seized without a warrant, to contest the lawfulness of the seizure. See U. S. Const., Amdt. 14, §1; *United States* v. *Von Neumann*, 474 U. S. 242 (1986); *United States* v. *$8,850,* 461 U. S. 555 (1983).  At the time of oral argument, however, we learned that the underlying property disputes have all ended.  The State has returned all the cars that it seized, and the individual property owners have either forfeited any relevant cash or have accepted as final the State's return of some of it.  We consequently find the case moot, and we therefore vacate the judgment of the Court of Appeals and remand the case to that court with instructions to dismiss. *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 39 (1950); see also E. Gressman, K. Geller, S. Shapiro, T. Bishop, & E. Hartnett, Supreme Court Practice 941–942 (9th ed. 2007).

## I

Illinois law provides for forfeiture of movable personal property (including cars and cash) used "to facilitate" a drug crime. Ill. Comp. Stat., ch. 720, §570/505(a)(6) (West 2008). It permits a police officer to seize that property without a warrant where (1) the officer has "probable cause to believe" the property was so used and (2) a "warrantless seizure . . . would be reasonable" in the circumstances. §570/505(b). When an officer has seized property without a warrant, the relevant law enforcement agency must notify the State's Attorney within 52 days of the seizure; the State's Attorney must notify the property owner of any impending forfeiture within a further 45 days; and, if the owner wishes to contest forfeiture, the State's Attorney must begin judicial forfeiture proceedings within yet a further 45 days. See ch. 725, §§150/5–150/6. Thus, the statute gives the State up to 142 days, nearly five months, to begin judicial forfeiture proceedings— during which time the statute permits the State to keep the car or cash within its possession.

On November 22, 2006, six individuals (the respondents or "plaintiffs") brought this federal civil rights action against defendants the city of Chicago, the Superintendent of the Chicago Police Department, and the Cook County State's Attorney (the petitioner here, whom we shall call the "State's Attorney"). See Rev. Stat. §1979, 42 U. S. C. §1983. Three of the individuals, Chermane Smith, Edmanuel Perez, and Tyhesha Brunston, said that earlier in 2006 the police had, upon their arrests, seized their cars without a warrant. See Complaint ¶25, App. 34a (Smith, seizure on Jan. 19, 2006); *id.,* ¶26, at 34a (Perez, seizure on Mar. 8, 2006); *id.,* ¶27, at 34a (Brunston, seizure on Apr. 8, 2006); Plaintiffs' Motion for Class Certification ¶8, at 39a. The other three plaintiffs, Michelle Waldo, Kirk Yunker, and Tony Williams, said that earlier in 2006 police had, upon their arrests, seized their cash without a

warrant. See Complaint ¶28, at 34a–35a (Waldo, seizure on Jan. 20, 2006); *id.,* ¶29, at 35a (Yunker, seizure on Sept. 26, 2006); *id.,* ¶30, at 35a (Williams, seizure in July 2006); Plaintiffs' Motion for Class Certification ¶8, at 39a. The plaintiffs added that the police department still had custody of their property. See Complaint ¶¶24–30, at 34a–35a. They claimed that the failure of the State to provide a speedy postseizure hearing violated the federal Due Process Clause. See U. S. Const., Amdt. 14, §1. And they asked the court (1) to certify the case as a class action, (2) to declare that they had a due process right to a prompt postseizure probable-cause hearing, (3) to declare that the hearing must take place within 10 days of any seizure, and (4) to enjoin the defendants' current practice of keeping the property in custody for a longer time without a judicial determination of probable cause. See Complaint ¶36, App. 36a.

The defendants moved to dismiss the complaint on the ground that Seventh Circuit precedent made clear that "the Constitution does not require any procedure prior to the actual forfeiture proceeding." *Jones* v. *Takaki*, 38 F. 3d 321, 324 (1994) (citing *Von Neumann, supra,* at 249). On February 22, 2007, the District Court granted the motion to dismiss. It also denied the plaintiffs' motion for class certification. The plaintiffs appealed.

On May 2, 2008, the Seventh Circuit decided the appeal in the plaintiffs' favor. *Smith* v. *Chicago*, 524 F. 3d 834. It reconsidered and departed from its earlier precedent. *Id.,* at 836–839. It held that "the procedures set out in" the Illinois statute "show insufficient concern for the due process right of the plaintiffs." *Id.,* at 838. And it added that, "given the length of time which can result between the seizure of property and the opportunity for an owner to contest the seizure under" Illinois law, "some sort of mechanism to test the validity of the retention of the property is required." *Ibid.* The Court of Appeals re-

versed the judgment of the District Court and remanded the case for further proceedings. *Id.,* at 839. Its mandate issued about seven weeks thereafter.

On February 23, 2009, we granted certiorari to review the Seventh Circuit's "due process" determination. The Court of Appeals then recalled its mandate. The parties filed briefs in this Court. We then recognized that the case might be moot, and we asked the parties to address the question of mootness at the forthcoming oral argument.

At oral argument counsel for both sides confirmed that there was no longer any dispute about ownership or possession of the relevant property. See Tr. of Oral Arg. 5 (State's Attorney); *id.,* at 56–57 (plaintiffs). The State had returned the cars to plaintiffs Smith, Perez, and Brunston. See *id.,* at 5. Two of the plaintiffs had "defaulted," apparently conceding that the State could keep the cash. *Ibid.* And the final plaintiff and the State's Attorney agreed that the plaintiff could keep some, but not all, of the cash at issue. *Id.,* at 5, 56–57. As counsel for the State's Attorney told us, "[T]hose cases are over." *Id.,* at 5.

## II

The Constitution permits this Court to decide legal questions only in the context of actual "Cases" or "Controversies." U. S. Const., Art. III, §2. An "'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Preiser* v. *Newkirk*, 422 U. S. 395, 401 (1975) (quoting *Steffel* v. *Thompson*, 415 U. S. 452, 459, n. 10 (1974)). In this case there is no longer any actual controversy between the parties about ownership or possession of the underlying property.

The State's Attorney argues that there is a continuing controversy over damages. We concede that the plaintiffs filed a motion in the District Court seeking damages. But the plaintiffs filed their motion after the Seventh Circuit

issued its opinion. And, after this Court granted certiorari, the Court of Appeals recalled its mandate, taking the case away from the District Court before the District Court could respond to the motion. Thus, we have before us a complaint that seeks only declaratory and injunctive relief, not damages.

The plaintiffs point out that they sought certification of a class. And a class might well contain members who continue to dispute ownership of seized property. But that fact is beside the point. The District Court denied the plaintiffs' class certification motion. The plaintiffs did not appeal that denial. Hence the only disputes relevant here are those between these six plaintiffs and the State's Attorney; those disputes concerned cars and cash; and those disputes are now over. *United States Parole Comm'n* v. *Geraghty*, 445 U. S. 388, 404 (1980) ("A named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified").

The parties, of course, continue to dispute the lawfulness of the State's hearing procedures. But that dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights. Rather, it is an abstract dispute about the law, unlikely to affect these plaintiffs any more than it affects other Illinois citizens. And a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words "Cases" and "Controversies." See, *e.g., Lewis* v. *Continental Bank Corp.*, 494 U. S. 472, 477 (1990); *North Carolina* v. *Rice*, 404 U. S. 244, 246 (1971) *(per curiam); Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 241 (1937); *Mills* v. *Green*, 159 U. S. 651, 653 (1895).

We can find no special circumstance here that might warrant our continuing to hear the case. We have sometimes heard attacks on practices that no longer directly

affect the attacking party, but are "capable of repetition" while "evading review." See, *e.g., Federal Election Comm'n* v. *Wisconsin Right to Life, Inc.*, 551 U. S. 449, 462 (2007); *Southern Pacific Terminal Co.* v. *ICC*, 219 U. S. 498, 515 (1911). Yet here, unlike those cases, nothing suggests that the individual plaintiffs will likely again prove subject to the State's seizure procedures. See *Los Angeles* v. *Lyons*, 461 U. S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality"); *DeFunis* v. *Odegaard*, 416 U. S. 312, 318–319 (1974) *(per curiam).* And in any event, since those who are directly affected by the forfeiture practices might bring damages actions, the practices do not "evade review." See *Memphis Light, Gas & Water Div.* v. *Craft*, 436 U. S. 1, 8–9 (1978) (damages claim saves case from mootness). Consequently, the case is moot. See, *e.g., Preiser*, *supra,* at 403–404; *Mills*, *supra,* at 658.

## III

It is less easy to say whether we should order the judgment below vacated. The statute that enables us to vacate a lower court judgment when a case becomes moot is flexible, allowing a court to "direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U. S. C. §2106; see also *U. S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, 513 U. S. 18, 21 (1994). Applying this statute, we normally do vacate the lower court judgment in a moot case because doing so "clears the path for future relitigation of the issues between the parties," preserving "the rights of all parties," while prejudicing none "by a decision which . . . was only preliminary." *Munsingwear,* 340 U. S., at 40.

In *Bancorp,* however, we described circumstances where

we would not do so. We said that, "[w]here mootness results from settlement" rather than "'happenstance,'" the "losing party has voluntarily forfeited his legal remedy . . . [and] thereby surrender[ed] his claim to the equitable remedy of vacatur." 513 U. S., at 25. The plaintiffs, pointing out that the State's Attorney agreed to return all three cars and some of the cash, claim that, with respect to at least four of the plaintiffs, this case falls within *Bancorp*'s "settlement" exception.

In our view, however, this case more closely resembles mootness through "happenstance" than through "settlement"—at least the kind of settlement that the Court considered in *Bancorp*. *Bancorp* focused upon a bankruptcy-related dispute that involved a legal question whether a bankruptcy court could lawfully confirm a debtor's Chapter 11 reorganization plan if the plan relied upon what the debtor said was a special exception (called the "new value exception") to ordinary creditor priority rules. *Id.,* at 19–20. The parties contested that legal issue in the Bankruptcy Court; they contested it in an appeal of the Bankruptcy Court's order to the Federal District Court; they contested it in a further appeal to the Court of Appeals; and eventually they contested it in this Court. *Id.,* at 20. While the case was pending here, the parties settled their differences in the Bankruptcy Court (the court where the case originated)—including their differences on this particular contested legal point. *Ibid.* They agreed upon a reorganization plan, which they said would constitute a settlement that mooted the federal case. *Ibid.*

Recognizing that the reorganization plan that the Bankruptcy Judge confirmed in the case amounted to a settlement that mooted the case, this Court did *not* vacate the lower court's judgment. The Court's reason for leaving the lower court's judgment in place was that mootness was *not* a result of "the vagaries of circumstance." *Id.,* at 25. Rather the party seeking review had "*caused* the mootness

by voluntary action." *Id.,* at 24 (emphasis added). By virtue of the settlement, that party had "voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari." *Id.,* at 25. Hence, compared to mootness caused by "happenstance," considerations of "equity" and "fairness" tilted against vacatur. *Id.,* at 25–26.

Applying these principles to the case before us, we conclude that the terminations here fall on the "happenstance" side of the line. The six individual cases proceeded through a different court system without any procedural link to the federal case before us. To our knowledge (and we have examined the state-court docket sheets), no one in those cases raised the procedural question at issue here. Rather, the issues in those six cases were issues solely of state substantive law: Were the cars and the cash forfeitable or not? And court docket sheets suggest that the six state cases terminated on substantive grounds in the ordinary course of such state proceedings. In the three automobile cases, the State voluntarily dismissed the proceedings and returned the cars between 11 and 40 months after the seizures, a long enough time for the State to have investigated the matters and to have determined (after the termination of any related criminal proceedings) for evidentiary reasons that it did not wish to claim the cars. See Dockets in *People* v. *2004 Chevrolet Impala*, No. 2006–COFO–000296 (Cook County, IL) (Brunston's car returned on July 27, 2009); *People* v. *Smith*, No. 2006–COFO–000036 (Cook County, IL) (Smith's car returned on May 5, 2008); and *People* v. *1999 Chevrolet Malibu*, No. 2006–COFO–000288 (Cook County, IL) (Perez's car returned on Jan. 29, 2007). In the remaining contested case, involving cash, the State voluntarily dismissed the proceedings after 14 months, again a long enough time for the State to have weighed the evidence and found a compromise settlement appropriate on the merits. See Docket in *People* v. *$1,500 in U. S. Currency*,

No. 2006–COFO–000201 (Cook County, IL) (Waldo's cash returned on Mar. 19, 2007). The disparate dates at which plaintiffs' forfeiture proceedings terminated—11, 14, 27, and 40 months after the seizures—indicate that the State's Attorney did not coordinate the resolution of plaintiffs' state-court cases, either with each other or with plaintiffs' federal civil rights case. Cf. *Munsingwear*, 340 U. S., at 39–40 (stating that a lower court judgment would have been vacated even though an action of the party seeking review had brought about the mootness *because* that action—a commodity being decontrolled by Executive Order—was basically unrelated); see also *Fleming* v. *Munsingwear, Inc.*, 162 F. 2d 125, 127 (CA8 1947).

For these reasons, we believe that the presence of this federal case played no significant role in the termination of the separate state-court proceedings. This conclusion is reinforced by the fact that neither party, although aware of *Bancorp,* suggested the contrary at oral argument. Indeed, both parties argued against mootness at oral argument, a fact that further suggests that a desire to avoid review in this case played no role at all in producing the state case terminations. Tr. of Oral Arg. 5–11, 33–38. And if the presence of this federal case played no role in causing the termination of those state cases, there is not present here the kind of "voluntary forfeit[ure]" of a legal remedy that led the Court in *Bancorp* to find that considerations of "fairness" and "equity" tilted against vacatur.

We consequently conclude that we should follow our ordinary practice, thereby "clear[ing] the path for future relitigation of the issues." *Munsingwear*, 340 U. S., at 40. Thus, nothing in this opinion prevents the plaintiffs from bringing a claim for damages based on the conduct alleged in their complaint. *Id.*, at 37–40.

We therefore vacate the judgment of the Court of Appeals and remand the case to that court with instructions to dismiss.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–351

_____

## ANITA ALVAREZ, COOK COUNTY STATE'S ATTORNEY, PETITIONER *v.* CHERMANE SMITH ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[December 8, 2009]

JUSTICE STEVENS, concurring in part and dissenting in part.

While I agree that this case is moot and join Parts I and II of the Court's opinion, I would not vacate the judgment of the Court of Appeals. Following the teaching of our decision in *U. S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, 513 U. S. 18 (1994), I would apply the general rule against vacating appellate judgments that have become moot because the parties settled.

*Bancorp* set forth the basic principles for determining whether to vacate a case that has become moot. The overriding concern is equitable: "From the beginning we have disposed of moot cases in the manner '"most consonant to justice" . . . in view of the nature and character of the conditions which have caused the case to become moot.'" *Id.,* at 24 (quoting *United States* v. *Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U. S. 466, 477–478 (1916), in turn quoting *South Spring Hill Gold Mining Co.* v. *Amador Medean Gold Mining Co.*, 145 U. S. 300, 302 (1892) (alteration in original)). The "public interest" must be considered as part of this equitable inquiry, *Bancorp*, 513 U. S., at 26, 27, and that interest is generally better served by leaving appellate judgments intact. "'Judicial precedents are presumptively correct

and valuable to the legal community as a whole. They are not merely the property of private litigants . . . .'" *Id.,* at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S. Philips Corp.*, 510 U. S. 27, 40 (1993) (STEVENS, J., dissenting)). Hence, we will typically vacate a judgment when the party seeking review has been "frustrated by the vagaries of circumstance" or "when mootness results from unilateral action of the party who prevailed below." *Bancorp*, 513 U. S., at 25. But we will typically decline to vacate when "the party seeking relief from the judgment below caused the mootness by voluntary action," *id.,* at 24, including action taken in good faith and in conjunction with the opposing party. Even when "respondent agreed to [a] settlement that caused the mootness," it remains "petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur." *Id.,* at 26. "[M]ootness by reason of settlement does not justify vacatur of a judgment under review." *Id.,* at 29.

In my view, the Court has misapplied these principles. To be sure, the "settlement" between the parties in this case might be distinguished from the more conventional settlement reached by the parties in *Bancorp*. And we have no evidence to suggest that petitioner returned respondents' property prior to the conclusion of our review with the purpose or expectation of manufacturing mootness. Nevertheless, petitioner's decision to return the automobiles when it did appears to have been legally discretionary, as was the "compromise settlement" that it reached with respondent Waldo regarding her cash, *ante,* at 8. In light of petitioner's purposive and voluntary action that caused the mootness—along with its failure to alert us to the relevant facts or to explain why vacatur would serve the public interest—I believe it has failed to

carry its burden to "demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur." *Bancorp*, 513 U. S., at 26.

There was a third option for disposing of this case: We could have dismissed the writ of certiorari as improvidently granted. Like denying the petition in the first place, that disposition would have preserved the judgment below. At the time we granted certiorari on February 23, 2009, petitioner had already resolved the underlying property disputes for five of the six named respondents. See *ante*, at 4, 8–9. It was entirely predictable that the final settlement would soon follow. Moreover, the briefing in this case has revealed a disagreement over basic descriptive questions of Illinois law, questions that were not passed upon below. Compare Brief for Petitioner 60–66 with Brief for Respondents 41–44. And, of course, we have no way of knowing how the District Court would have applied the Court of Appeals' remand order, which left it great discretion to "fashion appropriate procedural relief" "with the help of the parties." *Smith* v. *City of Chicago*, 524 F. 3d 834, 838 (CA7 2008). It has become clear that the Court was overhasty in deciding to review this case; the improvidence of our grant provides an additional reason why we should not vacate the work product of our colleagues on the Court of Appeals.

I respectfully dissent from Part III of the Court's opinion and from its judgment.